# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| 4518 S. 256th, LLC, a Nevada Limited Liability Company, | ) ) ) |
| Appellant, | ) ) |
| v. | ) ) |
| KAREN L. GIBBON, P.S., Trustee; RECONTRUST, N.A., Trustee, | ) ) ) |
| Defendants, | ) ) |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") acting as nominee for COUNTRYWIDE HOME LOANS, INC., Beneficiary; THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK, as Trustee for the certificateholders of CWABS, Inc. Asset-backed Certificates, Series 2006-7, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Respondents. | ) ) |

No. 73834-8-I

DIVISION ONE

PUBLISHED OPINION

FILED: **AUG 15 2016**

TRICKEY, J. — We consider whether a lender may initiate nonjudicial foreclosure of a deed of trust without accelerating the maturity date for the entire obligation secured by the deed of trust. We hold that it may, because acceleration and foreclosure are separate options that a lender is entitled to pursue after default.

We also hold that acceleration of the maturity of a debt does not occur automatically upon invocation of the power of sale. Rather, if a lender exercises its option to accelerate the loan, "acceleration [of the maturity of the debt] must be made in a clear and unequivocal manner which effectively apprises the maker that

the holder has exercised his right to accelerate the payment date." Glassmaker v. Ricard, 23 Wn. App. 35, 38, 593 P.2d 179 (1979).

In this case, there is no evidence that the lender gave notice to the borrowers that it clearly and unequivocally elected to accelerate the maturity date of the promissory note when it initiated nonjudicial foreclosure proceedings in 2008. Accordingly, the trial court properly concluded that the six-year statute of limitations did not accrue in 2008 on the entire unpaid balance of the loan. The statute does not bar enforcement of the loan in 2015. We affirm.

FACTS

Appellant 4518 S. 256th LLC (hereinafter "the LLC") is a Nevada limited liability company and the owner of real property located at 4518 S. 256th Place in Kent, Washington. The previous owners of the property were Teodoro Puebla and Elizabeth Villalovos, husband and wife.

Puebla and Villalovos obtained a residential loan in the amount of $256,000. The loan was documented by a promissory note dated May 25, 2006. The promissory note provided that Puebla and Villalovos would pay the debt in monthly installment payments and would pay the debt in full not later than June 1, 2036, the maturity date.

A deed of trust, dated May 25, 2006, secured the promissory note. The deed of trust was recorded on May 31, 2006, in the auditor's records of King County, Washington.

A notice of default dated July 9, 2008 was sent to Puebla and Villalovos, the then owners of the property subject to the deed of trust.[1] The notice declared them to be in default under the note and deed of trust. The notice itemized the defaults as failure to pay the past due monthly installment payments. As of the date of the notice, the monthly installment arrearages totaled $13,427.12 plus expenses.[2] The notice further stated that an additional monthly payment plus an additional late charge would become due before a notice of sale was recorded. Thus, the amount required to cure all defaults before recording of the notice of sale was $15,255.56.[3] It also stated that the failure to cure all alleged defaults within 30 days may lead to the sale of the property at public auction.[4] At the time of this notice, the unpaid principal balance of the loan was $255,932.00.[5]

Nothing in this notice of default to the borrowers stated that the lender chose to declare the unpaid balance of the loan due and payable.

On August 15, 2008, the original successor trustee under the deed of trust recorded a notice of trustee's sale.[6] This notice itemized the defaults as failure to pay the past due monthly installment payments.[7] As of the date of this notice of trustee's sale, the monthly installment arrearages totaled $15,155.43 plus expenses. It stated that the sale of the property would be held on November 14, 2008. The notice also stated that payment in the amount of $16,297.38 must be

---

[1] Clerk's Papers (CP) at 140-43.
[2] CP at 14, 140-43.
[3] CP at 141.
[4] CP at 142.
[5] CP at 142.
[6] CP at 12-16.
[7] CP at 13.

3

made before the close of business on November 3, 2008, which was 11 days before the sale date, to cause a discontinuance of the sale.[8] After that date, discontinuance of the sale required payment of the entire unpaid balance of principal and interest secured by the deed of trust.[9]

Nothing in this notice of trustee's sale to the borrowers stated that the lender chose to declare the unpaid balance of the loan due and payable.

This scheduled foreclosure sale never occurred. On November 28, 2011, the original successor trustee recorded a notice of discontinuance of trustee's sale.

On October 21, 2014, a second notice of default was sent to Puebla and Villalovos, who were still the owners of the property.

On February 2, 2015, a new successor trustee recorded a new notice of trustee's sale.[10] This notice itemized the defaults as failure to pay the past due monthly installment payments. As of the date of this notice of trustee's sale, the arrearages totaled $166,568.72 in past monthly installment payments plus expenses. It announced that the sale of the property would be held on June 12, 2015. At the time of this notice, the unpaid principal balance of the loan was then $255,932.00.

On February 17, 2015, Puebla and Villalovos quitclaimed their property to the LLC. There is no evidence in this record that the LLC either assumed or agreed to pay the loan to Puebla and Villalovos.

---

[8] CP at 14.
[9] CP at 14.
[10] CP at 20-22.

4

On March 6, 2015, the LLC commenced this action against both successor trustees, the Bank of New York Mellon ("Bank of New York"), and others. The LLC sought (1) to quiet title to the property in its favor, (2) a declaratory judgment that the Bank of New York's rights, title, and interest in the property are forever barred by the running of the statute of limitations, and (3) an injunction restraining the foreclosure sale.

On June 5, 2015, a trial court commissioner entered a stipulated order restraining the trustee's sale until further order of the court.

Both parties moved for summary judgment. The primary issue before the trial court was whether the six-year statute of limitations barred enforcement of the loan. The LLC argued that the deed of trust was unenforceable because acceleration of the maturity date of the promissory note occurred in 2008, more than six years prior to the commencement of the 2015 foreclosure. The Bank of New York argued that the deed of trust remained enforceable because it never accelerated the maturity of the promissory note.

After a hearing on July 31, 2015, the trial court concluded that acceleration had not occurred and thus, the statute of limitations did not bar enforcement of the loan. Accordingly, the trial court granted summary judgment in favor of the Bank of New York and dismissed the LLC's lawsuit with prejudice. The trial court also ordered that the preliminary injunction previously entered "shall remain in effect until [August 31, 2015], at which point it shall automatically dissolve."[11]

---

[11] CP at 185.

Thereafter, the Bank of New York moved for an award of attorney fees and costs. The trial court granted this motion. It appears to have done so on the basis of a fee provision in the deed of trust.

The LLC appeals the summary judgment order.

ANALYSIS

Waiver

As an initial matter, the Bank of New York argues that the LLC waived its right to appeal the dismissal of its quiet title action. We disagree.

To support this assertion, the Bank of New York relies on Frizzell v. Murray, 179 Wn.2d 301, 307, 313 P.3d 1171 (2013). There, the Supreme Court held that "a waiver of a postsale contest occurs when 'a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale.'" 179 Wn.2d at 306-07 (quoting Plein v. Lackey, 149 Wn.2d 214, 229, 67 P.3d 1061 (2003)).

The Bank of New York also relies on RCW 61.24.127(2). Under that statute, a postsale claim for monetary damages "may not operate in any way to encumber or cloud the title to the property that was subject to the foreclosure sale, except to the extent that a judgment on the claim in favor of the borrower or grantor may, consistent with RCW 4.56.190, become a judgment lien on real property then owned by the judgment debtor." RCW 61.24.127(2)(e).

These authorities do not support the Bank of New York's assertion that "this appeal is barred by waiver."[12] This is not a postsale action contesting the foreclosure, nor is it a postsale action for monetary damages. Rather, this is an *appeal* of a *presale* action contesting the foreclosure. The LLC commenced this action prior to the foreclosure and obtained an order restraining the sale. That order dissolved 30 days after the entry of the summary judgment order.

The Bank of New York does not cite any relevant authority that the LLC's failure to take further action to restrain the foreclosure sale pending appeal results in waiver of its right to appeal. For this reason, we reject this argument.

### Mootness

The Bank of New York also argues that this appeal is moot because the property at issue has been sold to a third party. To support this argument, the Bank of New York relies on evidence that the property was sold at a foreclosure sale on September 4, 2015 to a nonparty.[13] We again disagree.

"'A case is technically moot if the court can no longer provide effective relief.'" State v. Beaver, 184 Wn.2d 321, 330, 358 P.3d 385 (2015) (quoting State v. Hunley, 175 Wn.2d 901, 907, 287 P.3d 584 (2012)). As a general rule, appellate courts "do not consider cases that are moot or present only abstract questions." Beaver, 184 Wn.2d at 330. However, "[e]ven if a case becomes moot, the court has the discretion to decide an appeal if the question is one of continuing and substantial public interest." Beaver, 184 Wn.2d at 330.

---

[12] Resp'ts MERS and [Bank of New York (BONY)]'s Answering Br. at 10 (boldface and capitalization omitted).
[13] The Bank of New York has filed a motion to supplement the appellate record with evidence of this sale. We grant the motion.

Here, this court can provide effective relief. The LLC's complaint sought declaratory relief that the Bank of New York's claims under the deed of trust and promissory note were barred by the statute of limitations. If this court agrees, then the LLC may have a valid cause of action for monetary damages based on the trustee's material violation of the deeds of trust act (DTA). RCW 61.24.127(1); see also Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 429, 334 P.3d 529 (2014) (holding that there is no actionable, independent cause of action for monetary damages under the DTA, based on DTA violations, absent a completed foreclosure sale).

In short, this appeal is not moot. Moreover, this case presents an issue of continuing and substantial public interest. For these reasons, we reach the merits of the appeal.

## Statute of Limitations

The LLC argues that the trial court erred by granting summary judgment in favor of the Bank of New York. It contends that the maturity date of the promissory note was accelerated during the 2008 foreclosure proceedings and thus, the six-year statute of limitations for the collection of debt had expired. It relies on language from the deed of trust, the DTA, and case law from Washington and other jurisdictions, to assert that the invocation of the power of sale presumes an acceleration.

The Bank of New York counters that acceleration and foreclosure are separate and distinct options that a lender may exercise in the case of a borrower's default. Accordingly, it contends that summary judgment in its favor was proper

because the lender never accelerated the maturity date of the loan and the statute of limitations for the unpaid balance of the loan had not expired in 2015. We agree with the Bank of New York.

"As an agreement in writing, the deed of trust foreclosure remedy is subject to a six-year statute of limitations." Edmundson v. Bank of America, N.A., et. al., No. 74016-4-I, 2016 WL 3853751, at *3 (Wash. Ct. App. July 11, 2016); RCW 4.16.040.

In Herzog v. Herzog, our Supreme Court addressed when the six-year statute of limitations on a written agreement accrues. 23 Wn.2d 382, 387-88, 161 P.2d 142 (1945). In doing so, it distinguished a demand note from an installment note. 23 Wn.2d at 387-88. The statute of limitations accrues on a demand note when it is executed. By contrast, when recovery is sought on an installment note, "the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it." 23 Wn.2d at 388; accord 25 DAVID K. DeWolf, KELLER W. ALLEN, & DARLENE BARRIER CARUSO, WASHINGTON PRACTICE: CONTRACT LAW & PRACTICE § 16:21, at 511 (3rd ed. 2014) ("Where a contract calls for payment of an obligation by installments, the statute of limitations begins to run for each installment at the time such payment is due.").

But if an obligation that is to be paid in installments is accelerated, the entire remaining balance becomes due and the statute of limitations is triggered for all installments that had not previously become due. 31 RICHARD A. LORD, WILLISTON ON CONTRACTS § 79:17, at 338; § 79:18, at 347-50; accord 12 AM.JUR.2D, BILLS &

NOTES § 581. The statute of limitations commences upon maturity of a note. A.A.C. Corp. v. Reed, 73 Wn.2d 612, 615, 440 P.2d 465 (1968).

To accelerate the maturity date of a promissory note, "'[s]ome affirmative action is required, some action by which the holder of the note makes known to the payors that he intends to declare the whole debt due.'" Glassmaker, 23 Wn. App. at 37 (emphasis omitted) (quoting Weinberg v. Naher, 51 Wash. 591, 594, 99 P. 736 (1909)). "[M]ere default alone will not accelerate the note." A.A.C. Corp., 73 Wn.2d at 615. "[A]cceleration [of the maturity of the debt] must be made in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date." Glassmaker, 23 Wn. App. at 38.

We review de novo whether a statute of limitations bars an action. Bennett v. Computer Task Grp., Inc., 112 Wn. App. 102, 106, 47 P.3d 594 (2002). We also review de novo questions of contract interpretation that do not depend on the use of extrinsic evidence as well as questions of statutory interpretation. Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt, & Nichols-Kiewit Const. Co., 176 Wn.2d 502, 517, 296 P.3d 821 (2013); State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wash. Fed. v. Harvey, 182 Wn.2d 335, 340, 340 P.3d 846 (2015). This court reviews de novo the grant of summary judgment. Harvey, 182 Wn.2d at 339.

10

Here, the parties agree that the 2006 promissory note is an installment note.[14] This is confirmed by the deed of trust, which states that the borrower "promised to pay this debt in regular [p]eriodic [p]ayments."[15] The crux of the parties' dispute is whether the lender accelerated the June 1, 2036 maturity date in 2008 when the lender initiated foreclosure proceedings. If so, the statute of limitations for the entire debt accrued at that time. If not, the statute of limitations did not bar enforcement of the deed of trust for each of the monthly installment payments that became due within six years prior to the 2015 nonjudicial foreclosure. Edmundson, 2016 WL 3853751 at *5. We conclude that acceleration did not occur.

In Weinberg, the Supreme Court stated the controlling principle of law defining when acceleration of the maturity of a debt occurs: "Some affirmative action is required, some action by which the holder of the note makes known to the payors that he intends to declare the whole debt due." 51 Wash. at 594. In this case, the holder of the note never made it known to the payors that it intended to declare the whole debt due.

The 2008 notice of default sent to Puebla and Villalovos stated defaults under the deed of trust for failure to make back monthly installment payments in the total amount of $13,427.12 plus expenses. The notice of default required payment in the amount of $15,255.56 in order to cure the defaults before recording of the notice of trustee's sale.

---

[14] See Br. of Appellant at 8, Resp'ts MERS and BONY's Answering Br. at 3.
[15] CP at 108.

Nowhere in the notice of default is there any statement that the Bank of New York declared due the entire unpaid balance of the loan. On the contrary, the statement of the amounts due are limited to past due monthly installment payments plus expenses, not the entire unpaid principal balance of the loan.

The notice expressly threatened foreclosure. It did not threaten acceleration. In pertinent part, it stated:

> **G) Effect of Failure to cure:** Failure to cure all alleged defaults within 30 days of mailing/personal service of this notice may lead to recordation, transmittal and publication of a notice of sale and the property described above may be sold at public auction no less than 120 days from the date of this notice.[16]

Likewise, the 2008 notice of trustee's sale did not contain any language indicating that the Bank of New York gave notice to the borrower that it was exercising its option to declare the entire unpaid balance of the debt due and payable. On the contrary, the statement of the amounts due are limited to past due monthly installment payments plus expenses, not the entire unpaid balance of the loan.

Nor did the notice of trustee's sale contain any language that acceleration would be automatic. The notice stated defaults under the deed of trust for the failure to pay monthly payments totaling $15,155.43 plus expenses. It stated that the sale of the property would be held on November 14, 2008. Additionally, it stated the borrower's rights to discontinue the sale and the methods by which the borrower could do so. In pertinent part, it stated:

> The above-described real property will be sold to satisfy the expense of the sale and the obligation secured by the Deed of Trust as

---

[16] CP at 142.

12

provided by statute. The sale will be made without warranty, express or implied regarding title, possession, or encumbrances on 11/14/2008. The default(s) referred to in paragraph III, together with any subsequent payments, late charges, advances costs and fees thereafter due, must be cured by 11/03/2008 (11 days before the sale date), to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before the close of the Trustee's business on 11/03/2008 (11 days before the sale date), the default(s) as set forth in paragraph III, together with any subsequent payments, late charges, advances, costs and fees thereafter due, is/are cured and the Trustee's fees and costs are paid. The sale may be terminated any time after 11/03/2008 (11 days before the sale date), and before the sale by the Borrower, Grantor, and Guarantor or the holder of any recorded junior lien or encumbrance paying the entire balance of principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any made pursuant to the terms of the obligation and/or Deed of Trust.[17]

The LLC overlooks both the law on acceleration, as expressed in Weinberg and Glassmaker, and the provisions of the various notices that we discussed earlier. Moreover, it does not provide any evidence that the Bank of New York gave any other notice to the borrowers that it was accelerating the maturity of the loan.

Despite this lack of evidence, the LLC relies on the last sentence in the above provision to argue that the lender accelerated the debt. That reliance is incorrect.

That sentence incorporates into this deed of trust statutory language from RCW 61.24.040(1)(f), which addresses the contents of the notice of foreclosure. This argument confuses a lender's option to accelerate the maturity of a debt by giving notice to a borrower with the legislature's statement of a method by which a borrower may cure a default within the period of 11 days before a trustee's sale.

---

[17] CP at 14.

13

These are not the same. Thus, this sentence in the deed of trust does not require that we conclude that acceleration of the maturity of a debt is a prerequisite to a nonjudicial foreclosure proceeding under the DTA.

Our conclusion is supported by the plain language of RCW 61.24.030, another provision of the DTA. This provision states what "shall be requisite to a trustee's sale." RCW 61.24.030.

This provision sets forth detailed requirements in nine numbered paragraphs. RCW 61.24.030(8) includes a requirement that at least 30 days prior to a recording of a notice of trustee's sale a notice of default must be sent to the borrowers. The minimum requirements for the content of such a notice are set forth in numerous subparagraphs. Nowhere in these detailed requirements is there any statement about acceleration of the maturity of a debt.

Surely, if acceleration of the maturity of a debt was a prerequisite to nonjudicial foreclosure, there would be some reference to that requirement in RCW 61.24.030. There is none. We conclude from our comparison of these statutes that acceleration of the maturity of a debt remains an option of a lender. And this option must be exercised by clear and unequivocal notice to the borrowers. It is not self-executing.

Significantly, there is no evidence from the borrowers in this case that they ever received notice from the lender of the latter's acceleration of the maturity date of the loan.

Moreover, additional documentation also establishes that the lender did not accelerate the maturity of the debt in 2008. In a declaration, the original successor

14

trustee under the deed of trust stated that it had "no record that the loan secured by the [d]eed of [t]rust was ever accelerated."[18] Further, and more significantly, the internal records of the loan servicer dated May 18, 2015, show that the total amount due at that time was $181,734.02.[19] That amount was comprised of past due monthly installment payments of $2,124.59 per month over a period of years plus expenses. Significantly, this is approximately $70,000 less than the then outstanding principal balance of the loan. In short, this evidence shows that the lender never gave clear and unequivocal notice to the borrowers that the entire unpaid balance of the loan was due. Rather, it only required payment of past due installment payments plus expenses.

The LLC argues that acceleration occurred "when or before" the trustee invoked the power of sale in 2008.[20] It relies on several authorities for the proposition that "[t]he invocation of the power of sale presumes an acceleration."[21] We disagree.

The LLC first relies on the deed of trust to argue that acceleration occurred in 2008. The LLC asserts that, under Paragraph 22 of the deed of trust, the lender does not have the option to invoke the power of sale without acceleration. This argument is not persuasive.

Paragraph 22 provides:

> **Acceleration: Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The

---

[18] CP at 137.
[19] CP at 149.
[20] Br. of Appellant at 11.
[21] Br. of Appellant at 12.

15

notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, *Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law.* Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made herein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.[22]

---

[22] CP at 116 (second emphasis added).

The plain language of Paragraph 22 indicates that acceleration of the loan is permissive: "Lender *at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand* and may invoke the power of sale and/or any other remedies permitted by Applicable Law."[23] Paragraph 22 does not say that the lender cannot foreclose without accelerating the loan.

The LLC argues that the use of the word "and" in the previously quoted sentence indicates that the deed of trust "does not contemplate any scenario where the Lender can invoke the power of sale without acceleration" because courts presume that "and" functions conjunctively.[24]

But "[i]n certain circumstances, the conjunctive 'and' and the disjunctive 'or' may be substituted for each other if it is clear from the plain language of the statute that it is appropriate to do so." Bullseye Distrib. LLC v. State Gambling Comm'n, 127 Wn. App. 231, 239, 110 P.3d 1162 (2005); Kozey, 183 Wn. App. at 698. The same is true of contract interpretation. See Noell v. Am. Design, Inc., Profit Sharing Plan, 764 F.2d 827, 833 (11th Cir.1985) ("It is an established principle that '[t]he word "or" is frequently construed to mean "and," and vice versa, in order to carry out the evident intent of the parties.'" (alteration in original) (quoting Dumont v. United States, 98 U.S. (8 Otto) 142, 143, 25 L. Ed 65 (1878)). Accordingly, we interpret the word "and" according to context. See Black v. Nat'l Merit Ins. Co., 154 Wn. App. 674, 688, 226 P.3d 175 (2010).

---

[23] CP at 116 (emphasis added).
[24] Br. of Appellant at 10-11 (emphasis omitted) (citing State v. Kozey, 183 Wn. App. 692, 698, 334 P.3d 1170 (2014), review denied, 182 Wn.2d 1007, 342 P.3d 327 (2015)).

When read in context, it is clear that the "and" is not conjunctive. Paragraph 22 of the deed of trust indicates that acceleration and foreclosure are separate options for the lender. The second paragraph of Paragraph 22 reinforces this conclusion. It states certain requirements of the lender if the lender invokes the power of sale. These include issuing a notice to the trustee of the lender's election to cause the property to be sold and issuing a notice to the borrower regarding the sale. Nowhere does this paragraph require the lender to accelerate the loan in order to foreclose.

The LLC next relies on the DTA to argue that acceleration occurred in 2008. Specifically, it relies on RCW 61.24.090, the statute for curing defaults before a deed of trust foreclosure sale. In particular, the LLC relies on subsections (1)(a) and (3), which provide as follows:

> (1) At any time prior to the eleventh day before the date set by the trustee for the sale in the recorded notice of sale, or in the event the trustee continues the sale pursuant to RCW 61.24.040(6), at any time prior to the eleventh day before the actual sale, the borrower, grantor, any guarantor, any beneficiary under a subordinate deed of trust, or any person having a subordinate lien or encumbrance of record on the trust property or any part thereof, shall be entitled to cause a discontinuance of the sale proceedings by curing the default or defaults set forth in the notice, which in case of a default by failure to pay, shall be paying to the trustee:
>
> (a) The entire amount then due under the terms of the deed of trust and the obligation secured thereby, other than such portion of the principal as would not then be due had no default occurred[.]
>
> . . . .
>
> (3) Upon receipt of such payment the proceedings shall be discontinued, the deed of trust shall be reinstated and the obligation shall remain as though no acceleration had taken place.

But these provisions do not address whether a lender may initiate nonjudicial foreclosure of a deed of trust without accelerating the maturity date for the entire obligation.

We previously examined subsection (1)(a) in Meyers Way Dev. Ltd. P'ship. v. Univ. Sav. Bank, 80 Wn. App. 655, 669, 910 P.2d 1308 (1996). There, we considered whether subsection (1)(a) prohibited a creditor foreclosing nonjudicially from accelerating a defaulted loan. 80 Wn. App. at 669. We concluded that it did not. We held that "[n]othing in this provision prohibits acceleration of a loan in order to charge default interest on the amount owing." 80 Wn. App. at 669. Rather, the subsection "simply precludes the creditor from enforcing the election prior to the eleventh day before the date of the trustee's sale, and allows the debtor to reinstate the loan prior to that time by paying the amount which would have been due under the terms of the deed of trust if no default had occurred." 80 Wn. App. at 669-70.

We are now confronted with an argument that this subsection *requires* a creditor foreclosing nonjudcially to accelerate a defaulted loan. We again answer in the negative. As we stated in Meyers Way, this subsection merely precludes a creditor from enforcing the election prior to the eleventh day before the sale and allows the debtor to reinstate the loan prior to that time. Just as there is no language in this subsection prohibiting acceleration of the loan, we see no language in this subsection *mandating* acceleration of the loan. It is entirely the decision of the lender.

19

Subsection (3) is also silent about whether a lender may initiate nonjudicial foreclosure of a deed of trust without accelerating the loan. Subsection (3) merely provides that if the lender did exercise its option to accelerate, the act of curing the default will result in the deed of trust being reinstated as though no acceleration had taken place. It does not, by its terms, indicate that acceleration necessarily takes place before or upon invocation of the power of sale.

Lastly, the LLC relies on several out of state cases to argue that "[t]he election of the creditor to accelerate in the case of a nonjudicial foreclosure is sufficiently indicated by the fact that the creditor claims the whole debt to be due by its advertisement of the property for sale, or by the commencement of a suit for foreclosure of the entire mortgage."[25] But these cases have no application to the Washington statutory scheme pertaining to nonjudicial foreclosures. Further, to the extent that these courts held that the notice of the foreclosure was sufficient to constitute notice of acceleration, we disagree that this meets Washington's standard, which requires a "clear and unequivocal" statement of acceleration. Glassmaker, 23 Wn. App. at 38.

In sum, we hold that a lender has several options after default. A lender may accelerate the maturity date of a loan. A lender may pursue a nonjudicial foreclosure. A lender may accelerate the loan and pursue a nonjudicial foreclose. But a lender is not required to accelerate the loan in order to pursue a nonjudicial foreclose.

---

[25] Br. of Appellant at 13-15 (citing Heist v. Dunlap & Co., 193 Ga. 462, 466, 18 S.E.2d 837 (1942); Redwine v. Frizzell, 184 Ga. 230, 190 S.E. 789 (1937); McLemore v. Pac. Sw. Bank, 872 S.W.2d 286, 292 (Tex. App. 1994); Meadowbrook Gardens, Ltd. v. WMFMT Real Estate Ltd. P'ship, 980 S.W.2d 916, 918-19 (Tex. App.–Fort Worth 1993)).

We further hold that acceleration does not occur automatically by invoking the power of sale. In Washington, "acceleration [of the maturity of the debt] must be made in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date." Glassmaker, 23 Wn. App. at 38.

In this case, there is no evidence that the lender ever notified the borrowers that it clearly and unequivocally exercised its option to accelerate the maturity date of the loan. For these reasons, the trial court properly concluded that acceleration had not occurred and that the statute of limitations did not bar enforcement of the loan.

Given our resolution of this issue, we need not address the other arguments of the Bank of New York because it is unnecessary to do so.

<u>Attorney Fees</u>

The LLC seeks reversal of the trial court's decision not to grant it attorney fees below. The LLC does not challenge on appeal the award of fees to the Bank of New York below. Both parties request attorney fees on appeal.[26]

We hold that the trial court properly decided not to grant attorney fees to the LLC below, although we do so on a different basis than the trial court. Because neither party is entitled to attorney fees on appeal, we decline to award fees to either party.

---

[26] Br. of Appellant at 19-21; Resp'ts MERS and BONY's Answering Br. at 25-26.

In Washington, a prevailing party may recover attorney fees only if authorized by private agreement, by statute, or by a recognized ground in equity. State v. Keeney, 112 Wn.2d 140, 142, 769 P.2d 295 (1989).

RCW 4.84.330 authorizes attorney fees to the prevailing party in an action on a contract containing an attorney fee provision. This statute may apply if "the contract containing the attorney fee provision is central to the controversy." Hemenway v. Miller, 116 Wn.2d 725, 742, 807 P.2d 863 (1991). One must be a party to the contract, however, to potentially be entitled to an award. G.W. Equip. Leasing, Inc. v. Mt. McKinley Fence Co., Inc., 97 Wn. App. 191, 200, 982 P.2d 114 (1999).

Here, the LLC relies on the attorney fee provision in the deed of trust[27] and RCW 4.84.330 to argue that the trial court erred by not awarding it attorney fees below. This argument is unpersuasive.

First, the LLC was not a party to the deed of trust because it did not sign this loan document. Rather, the original owners of the property—Puebla and Villalovos—were the individuals who executed the deed of trust. Second, it is well-established under case law in Washington that a grantee of property subject to a mortgage or deed of trust[28] becomes personally liable on the note and deed of trust if it assumes and agrees to pay them. Citizens' Sav. & Loan Soc. v.

---

[27] The provision states: "**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Agreement, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal." CP at 116.

[28] A deed of trust is a species of mortgage. Rustad Heating & Plumbing Co. v. Waldt, 91 Wn.2d 372, 376, 588 P.2d 1153 (1979).

Chapman, 173 Wash. 539, 545, 24 P.2d 63 (1933). Here, the LLC is such a grantee from the borrowers. But there is no evidence that it assumed and agreed to pay the loan. Accordingly, there is no basis for an argument that the LLC is entitled to benefit from the fee provision in the deed of trust.

In sum, there was no basis for the trial court to award fees to the LLC below. The LLC provides no relevant authority to the contrary. Because the LLC did not challenge on appeal the award of fees to the Bank of New York below, we need not address that question.

The LLC also argues that it is entitled to an award of attorney fees on appeal because the deed of trust is central to this controversy and it provides a proper basis for an award to the prevailing party under RCW 4.84.330. We disagree.

Although the deed of trust is central to this controversy, the parties fail to recognize that the LLC was not a party to the deed of trust. Additionally, as we just discussed, the LLC did not assume or agree to pay the loan on acquisition of title.

In Watkins v. Restorative Care Center, Inc., this court held that a contractual attorney fee provision cannot authorize the recovery of fees from a nonparty. 66 Wn. App. 178, 194, 831 P.2d 1085 (1992). It reasoned that it "would be both unfair and contrary to law" to enforce the provision against the nonparty who was a "stranger[]" to that agreement. 66 Wn. App. at 195.

The same reasoning applies in this case. Because the LLC was not a party to the deed of trust, it would be contrary to law to enforce the attorney fee provision in that document against it. Similarly, because a contract does not confer benefits

23

on nonparties, it would also be contrary to law to award attorney fees to the LLC based on the deed of trust.  See Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc., 119 Wn.2d 334, 342-43, 831 P.2d 724 (1992).

## CONCLUSION

We affirm the summary judgment order and the denial of fees to the LLC below.  We deny both parties' request for attorney fees on appeal.

Trickey, J.

WE CONCUR:

Cox, J.