IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-7N,<br><br>                      Appellant,<br><br>vs.<br><br>DENISE M. STANTON; JACK H. STANTON, JR.; ALAN DAVID TIKAL, Trustee of the KATN REVOCABLE LIVING TRUST;<br><br>                    Respondents,<br><br>DOES 1-10 INCLUSIVE; UNKNOWN OCCUPANTS OF THE SUBJECT REAL PROPERTY; PARTIES IN POSSESSION OF THE SUBJECT REAL PROPERTY; PARTIES CLAIMING A RIGHT TO POSSESSION OF THE SUBJECT PROPERTY; ALL OTHER UNKNOWN PERSONS OR PARTIES CLAIMING ANY RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE REAL ESTATE DESCRIBED IN THE COMPLAINT HEREIN,<br><br>                    Defendants. | No. 77638-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br>FILED: March 18, 2019 |

CHUN, J. — The Stantons defaulted on their loan in 2008. U.S. Bank National Association (US Bank) brought a claim against them for judicial foreclosure and the Stantons filed a counterclaim to quiet title. Upon summary judgment motions from both parties, the trial court determined the statute of limitations barred the bank's action and ruled in favor of the Stantons on their

counterclaim. Notably, the trial court decided this case before our recent opinion in Merceri v. Bank of New York Mellon, 4 Wn. App. 2d 755, ___ P.3d ___, (2018), which applies to the limitations analysis herein. Because issues of fact remain as to if and when the Stantons' debt was accelerated, we affirm as to US Bank's motion, reverse as to the Stantons' motion, and remand the case for trial.

## I.
## BACKGROUND

### A. Facts

On September 26, 2005, Denise Stanton obtained a mortgage loan to purchase a home in Kirkland, Washington (the Property). She executed and delivered an adjustable rate promissory note (the Note) to Countrywide Home Loans, Inc. (Countrywide) in the amount of $910,000. To secure the Note, Denise and her husband, Jack Stanton, executed a deed of trust to Countrywide.

In 2007, the Stantons began to experience financial hardship and fell behind on their mortgage payments.

The Stantons received a letter from Countrywide on April 16, 2008. The letter stated, "If default is not cured on or before May 16, 2008, the mortgage payments **will be accelerated** with the full amount remaining accelerated and become due and payable in full, and foreclosure proceedings will be initiated at that time." Additionally, the letter provided that "[f]ailure to bring your loan current or to enter into a written agreement by May 16, 2008 as outlined above will result in the acceleration of your debt."

On July 9, 2008, the Stantons received a Legal Notice and Notice of

Default from Recontrust Company (Recontrust), the successor trustee of the deed of trust, stating they owed $992,461.63. The Notice of Default provided that the Stantons could cure the payment defaults by paying $28,104.70 within 30 days. The Stantons did not cure the defaults.

Recontrust then sent the Stantons a Notice of Trustee's Sale on August 9, 2008. For reasons unknown to the parties, the sale did not occur.

The Stantons received another Notice of Trustee's sale, recorded on February 18, 2010. Again, the sale did not occur for reasons unknown to the parties

In late 2010, the Stantons began working with Defendant Alan David Tikal, who promised to reduce their outstanding mortgage debt. As part of a foreclosure rescue scam, Tikal targeted distressed homeowners and promised to reduce their debts by 75 percent. In return for various fees and payments, he promised to extinguish existing loan obligations and make borrowers obligated to him for only 25 percent of their original debt. The Stantons executed a promissory note and deed of trust in the Property in Tikal's favor as part of his scheme. Several years later, in March 2015, a federal district court sentenced Tikal to 24 years in prison for his fraudulent scheme.

Between December 2011 and June 2012, the Stantons paid $41,549 to Tikal, who then recorded the deed of trust, a substitution of trustee to establish himself as the trustee of the Countrywide mortgage, and a reconveyance of the Countrywide deed of trust.

On June 1, 2011, a third Notice of Trustee's Sale was filed with a sale

date of September 2, 2011. A Notice of Discontinuance for this sale was filed on July 29, 2011.

On July 31, 2013, the Stantons received a letter from Nationstar Mortgage, LLC (Nationstar), the servicer of their loan. The letter informed the Stantons they were in default and Nationstar would "accelerate the entire sum of both principal and interest due and payable," if they did not cure their default by September 4, 2013. Nationstar sought to collect $344,029.75. The Stantons did not make a payment.

On April 21, 2015, Nationstar assigned the beneficial interest of the deed of trust to US Bank, making it the holder of the note.

B. Procedural History

US Bank filed a judicial foreclosure action against the Stantons and Mr. Tikal on August 29, 2016. The complaint asked the trial court to declare the reconveyance recorded by Tikal as null and void and sought a foreclosure judgment.

On January 17, 2017, the Stantons filed their answer to the complaint, counterclaim, and cross-claims. The answer pleaded the statute of limitations as an affirmative defense. The counterclaim sought to quiet title to the Property.

US Bank moved for summary judgment on June 23, 2017. US Bank argued that no issues of fact existed as to the Stantons' default, the limitations period had not run, and the court should dismiss the Stantons' quiet title claim.

In their opposition, the Stantons asserted Countrywide accelerated their debt on May 17, 2008. They argued the six-year limitations period had thus

expired before US Bank filed its complaint. The Stantons requested attorney fees pursuant to the terms of the deed of trust with Countrywide.

On July 24, 2017, the trial court denied US Bank's motion for summary judgment and awarded the Stantons attorney fees "per the contract." The court concluded that "the statute of limitations ran as argued by the defense."

On August 16, 2017, US Bank moved for reconsideration of the order denying its motion. It argued the trial court went beyond the scope of its summary judgment motion by determining the limitations period had run. US Bank further argued it should have been given an opportunity to seek and present additional evidence on tolling before the court decided whether its claims were time barred.

The trial court issued its order denying the motion for reconsideration on September 7, 2017. It concluded US Bank's motion was "untimely" and stated further that the motion was "denied on substance."

On September 12, 2017, the Stantons moved for summary judgment, asking the court to quiet title to the Property and release their title from the Countrywide deed of trust and US Bank's lis pendens. The Stantons again argued the debt had been accelerated on May 17, 2008, and therefore US Bank's foreclosure action was time barred. They also requested attorney fees pursuant to the Countrywide deed of trust.

On October 2, 2017, US Bank moved to amend its complaint to add claims against Tikal arising under RCW 19.40 (the Uniform Voidable Transactions Act). It claimed that "additional investigation into the factual

5

background in the case . . . [gave] rise to additional claims for relief against the Defendants . . . ." The trial court denied US Bank's motion to amend as untimely on October 3, 2017. The court noted the parties had previously agreed to a "September 4 cutoff for amending the compliant [sic]." The court additionally stated that US Bank gave no reason for its delay in adding the claims against Tikal and may have been moving to amend in an attempt to continue the trial date.

On October 13, 2017, the trial court granted the Stantons' summary judgment motion based on the statute of limitations. On November 3, 2017, the court entered findings of fact and conclusions of law (FFCL) as proposed by the Stantons. Additionally, it entered a Judgment for Quiet Title, and Attorney's Fees and Costs, which awarded the Stantons $34,348.23.

US Bank appeals.

## II.
## ANALYSIS

### A. Statute of Limitations

US Bank claims the trial court erred by denying its summary judgment motion, and granting the Stantons' motion, because the Stantons indisputably defaulted and the limitations period had not run. US Bank further argues that, at the very least, issues of fact remain as to if and when the Note was accelerated. The Stantons claim the trial court did not err because US Bank filed its action after the limitations period had expired.[1] We conclude issues of fact remain as to

---

[1] The Stantons additionally argue that, because US Bank did not assign error to the trial court's FFCL, this court must accept them as true. However, US Bank assigned error to the summary judgment order; and FFCLs are superfluous in summary judgment proceedings.

if and when Countrywide accelerated the debt, thus precluding summary judgment.

Appellate courts review summary judgment orders de novo and conduct the same inquiry as the trial court. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). All facts and reasonable inferences are viewed in the light most favorable to the nonmoving party. Owen, 153 Wn.2d at 787. A trial court properly grants summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Owen, 153 Wn.2d at 787.

"[The court] review[s] de novo whether a statute of limitations bars an action." 4518 S. 256th, LLC v. Karen L. Gibbon, P.S., 195 Wn. App. 423, 435, 382 P.3d 1 (2016) ("Gibbon"). While the court determines whether a statute of limitations bars a suit, "the jury must decide the underlying factual questions unless the facts are susceptible of but one reasonable interpretation." Goodman v. Goodman, 128 Wn.2d 366, 373, 907 P.2d 290 (1995).

"As an agreement in writing, the deed of trust foreclosure remedy is subject to a six-year statute of limitations." Edmundson v. Bank of Am., N.A., 194 Wn. App. 920, 927, 378 P.3d 272 (2016) (citing RCW 4.16.040).

For an installment note, the limitations period begins to run when each installment becomes due. Herzog v. Herzog, 23 Wn.2d 382, 388, 161 P.2d 142 (1945). "But if an obligation that is to be paid in installments is accelerated, the

---

Washington Optometric Ass'n v. Pierce County, 73 Wn.2d 445, 448, 438 P.2d 861 (1968). Thus, the failure to assign error to the FFCL has no effect. Washington Optometric Ass'n, 73 Wn.2d at 448.

entire remaining balance becomes due and that statute of limitations is triggered for all installments that had not previously become due." Gibbon, 195 Wn. App. at 434-35.

"[E]ven if the provision in an installment note provides for the automatic acceleration of the due date upon default, mere default alone will not accelerate the note." A.A.C. Corp. v. Reed, 73 Wn.2d 612, 615, 440 P.2d 465 (1968). Instead, for a court to deem a note accelerated, the holder of the note must act "in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date." Glassmaker v. Ricard, 23 Wn. App. 35, 38, 593 P.2d 179 (1979). Thus, "[s]ome affirmative action is required, some action by which the holder of the note makes known to the payors that he intends to declare the whole debt due." Weinberg v. Naher, 51 Wash. 591, 594, 99 P. 736 (1909).

Here, the trial court determined the note accelerated on May 17, 2008, because Countrywide stated it would accelerate the note if the Stantons did not cure their default before May 16, 2008. After the trial court's decision, we issued our opinion in Merceri, 4 Wn. App. 2d 755.[2] In that case, a borrower received a notice that her mortgage payments "will be accelerated" after she defaulted.

---

[2] The trial court also did not have the benefit of our decision in Erickson v. America's Wholesale Lender, No. 77742-4-I, (Wash. Ct. App. Apr. 16, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/777424.PDF, a decision rendered shortly before Merceri. In Erickson, we addressed the same "will be accelerated" language in a deed of trust and three notices of acceleration. We determined that the note had not been accelerated because the "[holder of the note] did not take an affirmative action that indicated that the payments on the loan had been accelerated." Erickson, No. 77742-4, slip op. at 6. Instead, "[t]he notices simply informed [the debtor] of a future contingent event." Erickson, No. 77742-4, slip op. at 7.

Merceri, 4 Wn. App. 2d at 757 (emphasis omitted).  Like the Stantons, the plaintiff argued her debt had been accelerated and the limitations period began to run after she did not cure her default by the provided date.  Merceri, 4 Wn. App. 2d at 758.  We held that the "will be accelerated" language in a notice does not automatically accelerate a debt.  Merceri, 4 Wn. App. 2d at 761.  Instead, an additional clear and unequivocal affirmative action to accelerate is required.  Merceri, 4 Wn. App. 2d at 761.  We additionally noted that declaring the entire debt due or refusing to accept installment payments could constitute affirmative action sufficient to accelerate a debt.  Merceri, 4 Wn. App. 2d at 761.

Accordingly, the Stantons' debt did not automatically accelerate on May 17, 2008, as the trial court concluded.  Although the April 16, 2008 letter stated their debt "will be accelerated," Countrywide did not necessarily take any affirmative action on May 17, 2008 to indicate it had in fact accelerated the debt.

However, on July 9, 2008, the Stantons received a letter titled "Important Legal Notice" from the trustee.  The letter informed them the trustee "is attempting to collect a debt" and they owed $992,461.63.  As US Bank concedes in its brief, this letter "evidences U.S. Bank's acceleration of the note."  See Merceri, 4 Wn. App. 2d at 761.

Yet on July 30, 2013, the Stantons received a letter from the loan servicer (Nationstar)[3] that sought to collect only "$344,029.75, which includes the sum of

_____

[3] US Bank first submitted this letter with its motion for reconsideration of the order denying its motion for summary judgment.  In its opposition, the Stantons argued the motion was untimely but did not object to the admissibility of the Nationstar letter.  The trial court indicated it denied the motion as untimely and on substance; accordingly, it considered the Nationstar letter.  As such, we consider the letter in resolving this appeal.  See Shellenbarger v. Brigman, 101 Wn. App. 339, 346, 2 P.3d 211 (2000) (noting appellate court will consider evidence submitted in

payments that have come due on and after the date of default 03/01/2008, any late charges, and periodic adjustments to the payment amount (if applicable) and expenses of collection." The letter further provided, "If you do not pay the full amount of the default, we shall accelerate the entire sum of both principal and interest due and payable." That the servicer sought to collect less than the full amount of the loan and warned that the debt may be accelerated suggests that Countrywide had not accelerated the debt.

The July 2008 and July 2013 letters constitute conflicting evidence as to whether the debt was ever intended to be accelerated. "[B]ecause the evidence proffered raises competing inferences as to the intent of the parties to the transaction, fact-finding by trial is indispensable." Kelley v. Tonda, 198 Wn. App. 303, 307, 393 P.3d 824 (2017). The conflicting evidence here entitles neither side to summary judgment.[4]

B. Motion to Amend

US Bank argues the trial court abused its discretion by denying the motion to amend its complaint. The Stantons assert the court correctly denied the motion. We agree with the Stantons.

Under CR 15(a), after a responsive pleading is served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." When

---

motion for reconsideration for determination of whether a genuine issue of material fact existed when trial court had considered the evidence).

[4] Given our conclusion, we need not address US Bank's argument that the trial court erred by denying its motion for reconsideration of its order granting the Stantons' summary judgment motion.

determining whether to grant leave to amend, the benchmark consideration for the court is whether the amendment would cause prejudice to the nonmoving party. Del Guzzi Constr. Co., Inc. v. Global Nw., Ltd., Inc., 105 Wn.2d 878, 888, 719 P.2d 120 (1986). A court may also consider "undue delay, bad faith or dilatory motive on the part of the movant." Tagliani v. Colwell, 10 Wn. App. 227, 233, 517 P.2d 207 (1973). "A trial court's action in passing on a motion for leave to amend will not be disturbed on appeal except for a manifest abuse of discretion or a failure to exercise discretion." Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, 100 Wn.2d 343, 351, 670 P.2d 240 (1983).

Here, the trial court denied the motion to amend, which was submitted more than a year after the complaint's filing, because US Bank did not give any reason for its delay. Indeed, US Bank offered no justification for the delay in its motion and has not done so on appeal. Though US Bank argues the trial court erred by denying its motion without finding its amendment would cause prejudice, it recognized in its original motion that a court may deny a motion to amend for undue delay. Additionally, the court feared US Bank was "trying to continue the entire trial date without actually so moving." Given these justifications, it cannot be said the trial court manifestly abused its discretion or failed to exercise it. This decision, however, is without any prejudice as to any future motion to amend that either party may bring.

C. Attorney Fees

The Stantons request attorney fees pursuant to the deed of trust, RCW 4.84.330, and RAP 18.1. Under RCW 4.84.330:

11

[W]here [a] contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

Here, section 26 of the parties' deed of trust states, "Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument."

1. Trial court award

After the trial court granted summary judgment for the Stantons, it awarded them $34,348.23 in attorney fees as the prevailing parties. Because the trial court erred by granting summary judgment for the Stantons, they were not the prevailing parties. We reverse the attorney fee award.

2. Attorney fees on appeal

Because we remand the case for trial, the Stantons are again not the prevailing parties. Accordingly we do not grant them attorney fees on appeal.

Affirmed in part, reversed in part, and remanded.

_____
Chun, J.

WE CONCUR:

_____
Mann, ACJ

_____
Dwyer, J.

12