Siddoway, J. (concurring in part and dissenting in part)
¶27 I agree with the lead opinion that we should affirm the dismissal of Angela Ukpoma's complaint. Because I disagree with the lead opinion's reason for affirming, I write separately.
¶28 The notice of default that Quality Loan Service Corporation (QLS), as trustee, sent to Ms. Ukpoma on February 1, 2008, is not ambiguous. It could hardly be more clear, *146 stating, "[T]he beneficiary has elected to accelerate the loan described herein" and "[the beneficiary] has declared the entire principal balance of $ 252,000.00, plus accrued costs, immediately due and payable." Clerk's Papers (CP) at 307. "NOTWITHSTANDING SAID ACCELERATION" reinforces the fact of acceleration, even if it is followed by an offer of terms on which Ms. Ukpoma could reinstate the loan. Id. Ms. Ukpoma never reinstated the loan. The unambiguous acceleration stands.
¶29 The lead opinion acknowledges that it finds ambiguity sua sponte. It does so in a matter that was decided on summary judgment. Three declarations were offered in support of summary judgment by U.S. Bank National Association on behalf of the beneficiary mortgage trust[1] (the Trust), and none of the three assert that the Trust did not elect to accelerate the obligation in 2008. For all we know, the reason the Trust later offered lesser cure amounts was the result of loss mitigation and mediation requirements enacted beginning in 2009.[2]
¶30 The Trust argues that it was entitled to summary judgment on different grounds (reason enough not to speculate about ambiguity). It argues first, that the acceleration language in QLS's notice of default was ineffective. Its second argument is that as a result of tolling, its judicial foreclosure action was not time barred when commenced on May 13, 2016.
¶31 The first ground is unpersuasive. The Trust does not deny that in 2008 it "elected to accelerate the loan described [in QLS's notice of default]" and "declared the entire principal balance of $ 252,000.00, plus accrued costs, immediately due and payable," as asserted by QLS's notice. CP at 307. For summary judgment purposes, we assume that it did. But it argues that QLS's notice of default failed to comply with Ms. Ukpoma's deed of trust in two respects: first, it was issued by QLS, not the Trust;[3] and second, it did not provide Ms. Ukpoma with notice and an opportunity to cure prior to acceleration.
¶32 If the Trust elected to accelerate and declare the entire loan balance due without providing the required form of notice, then the promisee -Ms. Ukpoma-could elect whether to claim a breach or waive it. E.g., Colo. Structures, Inc. v. Ins. Co. of W ., 161 Wash.2d 577, 588-89, 167 P.3d 1125 (2007) (plurality opinion). But the Trust provides no authority that a party can use its own breach as the basis for a defense. As Washington appellate courts frequently say, when an appellant cites no authority in support of a proposition, we may assume that counsel, after diligent search, found none. State v. Young, 89 Wash.2d 613, 625, 574 P.2d 1171 (1978).
¶33 The Trust cites an opinion of this court for the proposition that "[w]hether a lender has elected to accelerate a loan must be determined based on the language of the deed of trust." Resp't's Answering Br. at 6 (citing 4518 S. 256th, LLC , v. Karen L. Gibbon, P.S., 195 Wash. App. 423, 441-42, 382 P.3d 1 (2016) ). But that is not what the case holds.
¶34 In 4518 S. 256th , unlike this case, the beneficiary declared a default in an effort to collect only past due installments. 195 Wash. App. at 428-29, 382 P.3d 1. "Nothing in th[e]
*147 notice of default to the borrowers stated that the lender chose to declare the unpaid balance of the loan due and payable" and the notice identified the amount required to cure the default as $ 15,255.56, at a time when the unpaid principal balance of the loan was $ 255,932.00. Id. at 429, 382 P.3d 1. Not long thereafter, the original successor trustee under the deed of trust recorded a notice of trustee's sale. Id. "Nothing in th[e] notice of trustee's sale to the borrowers stated that the lender chose to declare the unpaid balance of the loan due and payable." Id. at 430, 382 P.3d 1. The scheduled foreclosure sale never occurred.
¶35 When a new successor trustee served a notice of trustee's sale more than six years later, the owners of the encumbered property filed their own suit to restrain the sale and quiet title. Id. They argued that collection of the entire obligation, not just the more-than-six-year-old installments, was time barred, because the first notices of default and of trustee's sale operated as an acceleration. Given no hint in those notices that the beneficiary intended to accelerate the loan balance, the property owners tried to rely, instead, on language in the deed of trust. They argued that the court should construe the deed of trust as providing that the beneficiary could only invoke the power of sale by accelerating the loan, so its notice of trustee sale implicitly operated as an election to accelerate. Id. at 441-42, 382 P.3d 1. Their argument was unsuccessful.
¶36 Contrary to the Trust's argument, the decision in 4518 S. 256th does not focus on provisions of the deed of trust; it emphasizes the intention of the beneficiary that is communicated to the borrower following a default: "To accelerate the maturity of a promissory note, '[s]ome affirmative action is required, some action by which the holder of the note makes known to the payors that he intends to declare the whole debt due.' " Id. at 435, 382 P.3d 1 (alteration in original) (internal quotation marks omitted) (quoting Glassmaker v. Ricard , 23 Wash. App. 35, 37, 593 P.2d 179 (1979) ). " '[Acceleration [of the maturity of the debt] must be made in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date.' " Id. (alterations in original) (quoting Glassmaker , 23 Wash. App. at 38, 593 P.2d 179 ). The Trust cannot rely on its failure to comply with its obligations under the deed of trust to avoid the plain acceleration language in QLS's notice of default.
¶37 The second ground for dismissal relied on by the Trust is rejected by the lead opinion but provides a legitimate basis on which to affirm the judgment in the Trust's favor. The Trust demonstrated that when tolling is taken into consideration, the Trust's commencement of its judicial foreclosure action was timely.
¶38 During the period after the notice of acceleration was sent and the foreclosure action was commenced, Ms. Ukpoma filed four bankruptcy actions. The automatic stay provided by the bankruptcy code, 11 U.S.C. § 362(a)(3), is a statutory prohibition that tolls the statute of limitations. Merceri v. Deutsche Bank AG, 2 Wash. App. 2d 143, 408 P.3d 1140, review denied , 190 Wash.2d 1027, 421 P.3d 457 (2018) (applying RCW 4.16.230 ).
¶39 Also during the period before the Trust filed suit, it commenced nonjudicial foreclosure proceedings seven times by serving notices of trustee's sales. By statute, a beneficiary who wishes to foreclose nonjudicially may not rely on the grantor's default to pursue an action seeking satisfaction of an obligation secured by the deed of trust. RCW 61.24.030(4). Generally, it may not obtain a deficiency judgment against a borrower. RCW 61.24.100(1). These provisions are mirrored by a judicial foreclosure provision, RCW 61.12.120, which prohibits concurrent actions. And see RCW 61.24.100(2) (providing that before initiating nonjudicial foreclosure and after discontinuing it, other action against a person liable on the secured obligation can be pursued).
¶40 The shortest time frame for the nonjudicial foreclosure process, absent any complications or postponements, is 190 days. RCW 61.24.040(12). A trustee may continue the sale for a period or periods not exceeding a total of 120 days. RCW 61.24.040(10). The statute outlining the requisites to a trustee's sale provides that mortgage servicers and *148 beneficiaries may discontinue any foreclosure action initiated under the "Deeds of Trust Act," chapter 61.24 RCW, in favor of other allowed methods for pursuit of foreclosure of the security interest or deed of trust security interest. RCW 61.24.030(12).
¶41 In Bingham v. Lechner , 111 Wash. App. 118, 131, 45 P.3d 562 (2002), this court affirmed the trial court's determination that the institution of a nonjudicial foreclosure proceeding tolls the statute of limitations to the date scheduled for foreclosure or, given the trustee's right to continue the sale for a period or periods not exceeding 120 days, to the date 120 days thereafter. While the author of the lead opinion in this case declines to follow Bingham , I find the decision consistent with RCW 4.16.230, which provides for tolling "[w]hen the commencement of an action is stayed by ... statutory prohibition."
¶42 The Deeds of Trust Act "furthers three basic objectives: an efficient and inexpensive nonjudicial foreclosure process, adequate opportunity to prevent wrongful foreclosure, and promotion of the stability of land titles." Cedar W. Owners Ass'n v. Nationstar Mortg., LLC , 7 Wash.App.2d 473, 485, 434 P.3d 554 (2019), https://www.courts.wa.gov/opinions/pdf/768123.pdf (citing Cox v. Helenius , 103 Wash.2d 383, 387, 693 P.2d 683 (1985) ). Given the Act's protections for borrowers, the nonjudicial foreclosure procedure is time consuming. A beneficiary who is pursuing nonjudicial foreclosure is taking action. Because the beneficiary is prohibited by RCW 61.24.030(4) from suing on its note while it is taking nonjudicial foreclosure action, RCW 4.16.230 applies.[4] I would affirm the trial court on that basis.
I CONCUR:
Korsmo, J.

Specifically, the Adjustable Rate Mortgage Trust 2007-2 Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2007-2.

Beginning in 2009, the legislature responded to a wave of residential foreclosures with a series of amendments to the "Deeds of Trust Act," chapter 61.24 RCW, that added additional protections and prerequisites to foreclosures of deeds of trust recorded against certain types of "residential real property," which is a defined term in the Act. 2 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK SERIES: REAL ESTATE ESSENTIALS § 21.11(2) at 21-31 (4th ed. 2014). In the case of certain noncommercial loans secured by owner-occupied residential property, the foreclosure process can be delayed by loss mitigation and mediation requirements or by a senior beneficiary's obligation to respond to a short sale offer. Id. at § 21.11(3)-(5) at 21-31 to -36.

While the Trust now argues that only it could issue the notice of default, its complaint seeking judicial foreclosure relied on a notice of default that had been issued by its servicer, whom it averred, "stands in the shoes of the Lender under the Deed of Trust." CP at 94. Its complaint characterized the servicer's notice as "satisfy[ying] each of the requirements [for effective notice of acceleration]." Id. at 93-94.

Ms. Ukpoma does not challenge the Trust's demonstration that when tolling for the bankruptcy and nonjudicial foreclosure proceedings are taken into effect, the action below was not time barred.