**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| COPPER CREEK (MARYSVILLE) HOMEOWNERS ASSOCIATION, a Washington nonprofit corporation, | No. 82083-4-I |
| Respondent, | ORDER GRANTING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION |
| v. | |
| SHAWN A. KURTZ and STEPHANIE A. KURTZ, husband and wife and the marital or quasi-marital community composed thereof; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington corporation, | |
| Defendants, | |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a CHRISTIANA TRUST, not individually but as trustee from Pretium Mortgage Acquisition Trust, Selene Finance LP, | |
| Appellants. | |

The respondent, Copper Creek (Marysville) Homeowners Association, has filed a motion for reconsideration. The Appellants, Selene finance LP and Wilmington Savings Fund Society FSB, d/b/a Christiana Trust, has filed an answer to the motion. The court has considered the motion, and a majority of the panel has determined that the motion should be granted and the opinion filed on January 18, 2022 but the opinion should be withdrawn and a substitute opinion filed; now, therefore, it is hereby

No. 82083-4-I/2

ORDERED that the motion for reconsideration is granted; and it is further

ORDERED that the opinion filed on January 18, 2022 is withdrawn; and it is further

ORDERED that a substitute opinion shall be filed and published in Washington Appellate Reports.

_Appelwick, J._

_____

FILED
4/11/2022
Court of Appeals
Division I
State of Washington

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| COPPER CREEK (MARYSVILLE) HOMEOWNERS ASSOCIATION, a Washington nonprofit corporation,<br><br>    Respondent,<br><br>  v.<br><br>SHAWN A. KURTZ and STEPHANIE A. KURTZ, husband and wife and the marital or quasi-marital community composed thereof; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington corporation,<br><br>    Defendants,<br><br>WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a CHRISTIANA TRUST, not individually but as trustee from Pretium Mortgage Acquisition Trust, Selene Finance LP,<br>    Appellants. | No. 82083-4-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

APPELWICK, J. — Selene/Wilmington seeks reversal of summary judgment quieting title in favor of Copper Creek. Relying on Edmundson v. Bank of America, 194 Wn. App. 920, 378 P.3d 272 (2016), the trial court determined the statute of limitations rendered the Selene/Wilmington deed of trust unenforceable. This was error.

The statute of limitations ran against the deed of trust only to the extent it ran against the underlying debt. The underlying debt was an installment debt. The statute of limitations accrued on each individual installment as it came due.

No. 82083-4-I/2

Bankruptcy discharge of the debtor did not extinguish the debt, modify the schedule of payments, or accelerate the maturity date. And, the lender did not accelerate the maturity date of the loan. The statute of limitations on each of the missed installments began running from the date they came due. Bankruptcy did not toll the statute of limitations. The discharge left intact the lender's option to enforce the debt against the property in rem.

However, the Servicemembers Credit Relief Act (SCRA), 50 U.S.C. § 3936(a), tolled the period for any action to enforce the debt until the debtor, an active duty servicemember, was relieved of personal liability on the debt by the discharge in bankruptcy. At that time, the statute of limitations began to run on any unpaid installments. Selene/Wilmington may enforce the deed of trust, except to the extent the statute of limitations has rendered any unpaid installments uncollectable.

We reverse and remand for further proceedings.

FACTS

In 2007, Shawn and Stephanie Kurtz purchased real property with a note for $303,472.00 secured by a deed of trust (DOT).[1]  Shawn was active duty in the United States military at the time and continued to be an active duty serviceman until at least September 2020.  The property was within the Copper Creek

---

[1] CTX Mortgage Company, LLC was the original beneficiary of the DOT. CTX assigned the DOT to J.P.  Morgan Mortgage Acquisition Corporation in December 2013.  In December 2018, J.P. Morgan Mortgage Acquisition assigned the DOT to JPMorgan Chase Bank who immediately assigned it to Citibank N.A. as trustee for CMLTI Asset Trust.  Citibank assigned the DOT to Wilmington Savings Fund Society as trustee for Pretium Mortgage Acquisition Trust in April 2019.

2

(Marysville) Homeowners Association and the Kurtzes were obligated to pay annual assessments of $400.

In January 2008, Shawn and Stephanie separated and Stephanie moved out of the property. The Kurtzes stopped paying on the note in 2008 or 2009. Stephanie filed for Chapter 7 bankruptcy protection in February 2010. Stephanie included the property secured by the DOT on the bankruptcy schedule of creditors holding secured claims. On the debtor's statement of intention, Stephanie noted the mortgage and her intention to surrender the property. Stephanie did not claim the property as exempt. Stephanie received a bankruptcy discharge in June 2010. The note was among the claims discharged without payment. Stephanie's bankruptcy case was closed on June 18, 2010.

The Kurtzes ceased payment of their annual assessment to Copper Creek in July 2010.

Shawn filed a separate Chapter 7 bankruptcy in March 2011. He identified the property secured by the DOT and his intention to surrender it. Shawn did not claim the property as exempt. Shawn also included Copper Creek as a creditor holding a secured claim for homeowners' dues in the amount of $1,826.50. His bankruptcy was discharged on July 13, 2011 and his case closed on July 18, 2011.[2] The note was among the claims discharged without payment.

The property sat vacant and fell into disrepair. In November 2018, Copper Creek recorded a notice of claim of lien against the property for the $15,278.68 in

---

[2] Because the record does not include whether the secured property was abandoned by the bankruptcy court prior to closure, we assume the protective injunction ended upon closure of the bankruptcy case. See 11 U.S.C. § 362(c)(1).

assessments, fees, interest, and attorney fees and costs that had accrued on the property. Copper Creek filed for judicial foreclosure to recoup the delinquent assessments.[3] Copper Creek acknowledges that it named only the Kurtzes as defendants in the judicial foreclosure, omitting the lenders because its assessment lien was junior to the lender and it was not seeking to foreclose the lender's interest. Copper Creek requested appointment of a receiver to "obtain possession of the Lot, refurbish it to a reasonable standard for rental units, and rent the Lot or permit its rental to others." In April 2019, Copper Creek and the Kurtzes entered an agreed order with the court for appointment of a custodial receiver. Copper Creek recorded the order appointing the receiver with Snohomish County Superior Court. The receiver spent $22,470.24 rehabilitating the property and began renting it at fair market value.

Shortly after completion of the repairs to the property, Quality Loan Service Corporation of Washington (QLS) as Trustee commenced nonjudicial foreclosure on the property on behalf of successor beneficiary Wilmington Savings Fund Society FAB and loan servicer Selene Finance LP (together "Selene/Wilmington"). On October 30, 2019, QLS provided a notice of trustee sale of the property to Copper Creek. In February 2020, Copper Creek notified QLS that enforcement of the DOT was barred by the statute of limitations and demanded discontinuation of the sale. QLS refused and Copper Creek filed a motion to restrain the sale.

---

[3] Shawn was still an active servicemember when Copper Creek filed for judicial foreclosure. He does not appear to have challenged the suit, instead he agreed to receivership. The validity of Copper Creek's judicial foreclosure action is not before us.

4

Copper Creek also filed a complaint against the Kurtzes, Selene/Wilmington, and QLS for lien foreclosure, restraint of the trustee sale, wrongful foreclosure, and quiet title.[4]  In April 2020, Selene/Wilmington filed a CR 12(b)(6) motion to dismiss the action to quiet title for lack of standing.  Prior to a ruling on that motion, Copper Creek received a deed in lieu of foreclosure from the Kurtzes that was recorded with the county on June 10, 2020.

In May 2020, Selene/Wilmington contacted Shawn and Stephanie and asked if they would execute a waiver of the statute of limitations on the underlying loan: "Given that you both seem to have moved on from the Property now, executing such a document likely wouldn't impact you much, if at all, but i[t] could help my client in the underlying litigation, and we'd be willing to give you something in exchange for your trouble."  Shawn refused and notified Copper Creek of the request.

In June 2020, Copper Creek moved to continue the sale and the motion to dismiss.  The trial court granted Copper Creek's motion, continuing both the trustee sale and the motion to dismiss to allow the parties time to conduct discovery.  The court entered an order compelling discovery with a deadline of July 7, 2020, and awarded attorney fees to Copper Creek. QLS then cancelled the sale.

Copper Creek requested and received leave to amend its complaint to reflect its standing through the deed in lieu of foreclosure.  Selene/Wilmington did

---

[4] Shawn was still an active duty servicemember at the time of this lawsuit. Arguably, the SCRA barred this action as against him. The issue of the SCRA's application to these claims is not before us. Moreover, the issue became moot when Copper Creek received the deed in lieu of foreclosure and the Kurtzes were no longer party to the suit.

not comply with discovery requests by the deadline. On July 10, 2020, QLS provided notice of trustee sale on the property to be conducted in October 2020. Copper Creek moved to enjoin the sale, and the trial court granted the motion.

Copper Creek requested an additional continuance on the motion to dismiss and moved for default judgment due to Selene/Wilmington's failure to provide discovery or file an answer to the amended complaint. In support of its motion to dismiss, Selene/Wilmington argued that because the property formerly belonged to a member of the United States military, the SCRA applied to toll the statute of limitations on the DOT. After oral argument on several competing motions, the trial court denied Selene/Wilmington's motion to dismiss and awarded Copper Creek attorney fees. The court expressed concern about Selene/Wilmington's "bad faith compliance with the rules in terms of discovery." In an attempt to force Selene/Wilmington to complete discovery, the court entered an order of default against Selene/Wilmington that would "enter on August 14, 2020 unless an order striking this default is entered by this court before said date." Selene/Wilmington answered the complaint and the parties stipulated to strike the order of default.

Copper Creek then filed a motion for summary judgment. Selene/Wilmington opposed the summary judgment and filed a CR 12(c) motion for judgment on the pleadings. After oral arguments, the trial court granted the summary judgment and quieted title in Copper Creek. The court struck Selene/Wilmington's motion for judgment on the pleadings as a CR 11 sanction. The trial court also awarded reasonable attorney fees to Copper Creek under RCW 4.84.185, the contractual attorney fee provision in the DOT, and also "as a matter

of equity because [of Selene/Wilmington's] bad faith and misconduct shown repeatedly throughout this case." The court subsequently entered a judgment against Selene/Wilmington for $96,779.09 in attorney fees.

Selene/Wilmington appeals the court's orders on summary judgment, motion to dismiss, motion for judgment on the pleadings, and the judgment for attorney fees.

DISCUSSION

The trial court granted summary judgment quieting title as to Copper Creek, because the statute of limitations had run on enforcement of the DOT. We review orders on summary judgment de novo. Kim v. Lakeside Adult Family Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing CR 56(c)). When the underlying facts are undisputed, we review de novo whether the statute of limitations bars an action. Edmundson, 194 Wn. App. at 927-28. The six year statute of limitations for an agreement in writing applies to enforcement of a DOT. Id. at 927; RCW 4.16.040(1).

I. Enforcement of the Deed of Trust

A DOT creates a security interest in real property. Brown v. Dep't of Commerce, 184 Wn.2d 509, 515, 359 P.3d 771 (2015). A note is a separate obligation from the deed of trust. Boeing Emps.' Credit Union v. Burns, 167 Wn. App. 265, 272, 272 P.3d 908 (2012). The note represents the debt, whereas the deed of trust is the security for payment of the debt. See id. The security

7

instrument follows the note that it secures. Deutsche Bank Nat'l Trust Co. v. Slotke, 192 Wn. App. 166, 177, 367 P.3d 600 (2016). "The holder of the promissory note has the authority to enforce the deed of trust because the deed of trust follows the note by operation of law." Winters v. Quality Loan Serv. Corp. of Wash., Inc., 11 Wn. App. 2d 628, 643-44, 454 P.3d 896 (2019).

A. The SCRA Tolled the Statute of Limitations on Enforcement of the Debt

Selene/Wilmington tried to enforce the terms of the note as secured by the DOT through nonjudicial foreclosure which prompted Copper Creek to bring the action to quiet title. The trial court concluded that the SCRA tolling provision did not apply to the foreclosure action, which allowed the statute of limitations to run on the DOT. The SCRA tolls statutes of limitations in lawsuits involving servicemembers.[5]

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

50 U.S.C. § 3936(a).

Shawn appears to have defaulted on the note in 2008 or 2009. The parties do not dispute that Shawn was an active duty servicemember until at least September 2020. As a result, the SCRA tolled any court action involving Shawn

---

[5] Washington has an equivalent statute that provides, "The period of a service member's military service may not be included in computing any period limited by law, rule, or order, for the bringing of any action or proceeding in a court . . . by or against the service member or the service member's dependents, heirs, executors, administrators, or assigns." RCW 38.42.090(1).

8

during his service. 50 U.S.C. § 3936(a). Bankruptcy discharge extinguished Shawn's personal liability on July 13, 2011. See Johnson v. Home State Bank, 501 U.S. 78, 82-83, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991). Without Shawn's personal liability, the debt, as evidenced by the note, was no longer enforceable against a servicemember. Without a servicemember's involvement, the SCRA ceased to toll the statute of limitations. As of July 14, 2011, the six year statute of limitations began running on enforcement of the unpaid installment.[6] See id. at 84.

B. Bankruptcy did Not Extinguish the Secured Debt

The Kurtzes both filed for Chapter 7 bankruptcy. "A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation." Id. at 82-83. Discharge of debts in bankruptcy extinguishes the "'personal liability of the debtor.'" Id. at 83 (quoting 11 U.S.C. § 524(a)(1)). So, the Kurtzes no longer had liability for the monthly installment payments on the note, past due or future, as of their respective discharge dates. But, the discharge extinguishes only the right of action against the debtor in personam, leaving intact

---

[6] The statute of limitations was tolled only because of the SCRA. Bankruptcy does not toll the statute of limitations. Hazel v. Van Beek, 135 Wn.2d 45, 64-66, 954 P.2d 1301 (1998); Merceri v. Deutsche Bank AG, 2 Wn. App. 2d 143, 148, 408 P.3d 1140 (2018). A bankruptcy petition triggers an automatic stay on "proceedings to obtain possession or exercise control of property in the bankruptcy estate." Merceri, 2 Wn. App. 2d at 148 (citing 11 U.S.C. 362(a)(3)). This stays all creditor actions to enforce liens against the debtor's property, including commencement of a foreclosure action. Id. at 148-51. Actions against the debtor are stayed until the earliest of case closure, dismissal, or discharge. 11 U.S.C. § 362(c)(2). The stay remains in effect against actions on the property of the estate until the property leaves the estate. 11 U.S.C. § 362(c)(1). If the statute of limitations to enforce a claim expires during the bankruptcy stay, 11 U.S.C. § 108(c)(2) provides a 30 day window after lifting of the bankruptcy stay in which to file the claim. Id. at 148-49.

9

No. 82083-4-I/10

the option to enforce a claim against a debtor in rem. Id. at 84. The Bankruptcy Code provides that a creditor's right to foreclose on secured property survives the bankruptcy. Id. at 83; 11 U.S.C. § 522(c)(2). A lien on real property passes through bankruptcy unaffected. Dewsnup v. Timm, 502 U.S. 410, 418, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992). However, a stay remains in effect against actions on the property of the estate until the property leaves the estate. 11 U.S.C. § 362(c)(1).

    C. The Staute of Limitations Application to Promissory Notes

The ability to enforce a breach of a promissory note depends on whether it is a demand or installment note. A demand promissory note is mature at its inception and is enforceable at any time. Cedar W. Owners Ass'n v. Nationstar Mortg., LLC, 7 Wn. App. 2d 473, 483, 434 P.3d 554 (2019). Therefore, the statute of limitations on a demand note runs from date of execution. 4518 S. 256th, LLC v. Karen L. Gibbon, PS, 195 Wn. App. 423, 434, 382 P.3d 1 (2016). By contrast, an installment note is payable in installments and matures on a future date. Merceri v. Bank of New York Mellon, 4 Wn. App. 2d 755, 759, 434 P.3d 84 (2018). "[T]he statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it." Herzog v. Herzog, 23 Wn.2d 382, 388, 161 P.2d 142 (1945). A separate statute of limitation accrues and runs for each individual installment. Edmundson, 194 Wn. App. at 931. The note holder has six years from default on an installment to enforce payment of that installment. See Merceri, 4 Wn. App. 2d at 759-60. The

10

final six year period to take action related to the debt begins to run at the date of full maturity. Id. at 760.

An installment note or the DOT securing it may include an option to accelerate the maturation date in case of breach of the contract. See 4518 S. 256th, 195 Wn. App. at 441. Upon acceleration, the entire balance becomes due and triggers the statute of limitations for all remaining installments. Id. at 434-35. Acceleration of the maturity date of a promissory note requires an affirmative action that is clear, unequivocal, and effectively notifies the borrower of the acceleration. Id. at 435. Default alone does not accelerate the note. Id. "[E]ven if the provision in an installment note provides for the automatic acceleration of the due date upon default, mere default alone will not accelerate the note." A.A.C. Corp. v. Reed, 73 Wn.2d 612, 615, 440 P.2d 465 (1968).

Deed of trust remedies are subject to RCW 4.16.040, the six year statute of limitations. Merceri, 4 Wn. App. 2d at 759. A debtor facing foreclosure can raise the statute of limitations as a defense to the sale. Walcker v. Benson & McLaughlin, PS, 79 Wn. App. 739, 746, 904 P.2d 1176 (1995); RCW 7.28.300. Applying the statute of limitations defense to nonjudicial foreclosure of a deed of trust based upon past due installments, we held that recovery was allowed for the actionable installments but not for those made unenforceable by the six year statute of limitations. Cedar W., 7 Wn. App. 2d at 489-90. To the extent that the statute of limitations runs on the underlying note, it also runs to the same extent on the enforcement of a deed of trust. See Walcker, 79 Wn. App. at 740-1.

D. Bankruptcy Discharge of Personal Liability on an Installment Note Does

Not Modify the Payment Schedule or Accelerate the Maturity Date of the

Note

The trial court concluded that Selene/Wilmington was precluded from enforcing its deed of trust by the statute of limitations. It reached this conclusion by relying on Edmundson for the proposition that the statute of limitations runs against enforcement of a deed of trust from the date of the last payment due prior to the debtor's discharge in bankruptcy.[7] This was error. Edmundson did not establish such a rule. No Washington Supreme Court case has established such a rule. It is not the law in Washington. The federal cases, which are the source of that interpretation of Edmundson, are in error.[8] To the extent that unpublished state appellate cases have repeated the federal interpretation, they are also in error.

The Edmundsons signed an installment note secured by a DOT in July 2007. Edmundson, 194 Wn. App. at 923. They failed to pay the November 1,

---

[7] The trial court referenced Hernandez v. Franklin Credit Management Corporation, which relied on Edmundson as discussed below. No. BR 18-01159-TWD, 2019 WL 3804138 (W.D. Wash. Aug. 13, 2019), aff'd sub nom. In re Hernandez, 820 F. App'x 593 (9th Cir. 2020).

[8] These cases were also questioned in an article published by the Creditor Debtor Rights Section of the Washington State Bar Association. Jason Wilson-Aguilar, Does A Bankruptcy Discharge Trigger the Running of the Statute of Limitations on Actions to Enforce a Deed of Trust?, 37 CREDITOR DEBTOR RTS. NEWS LETTER, no. 1, Summer 2019, at 3-6, https://wsba.org/docs/default-source/legal-community/sections/cd/resources/creditor-debtor-rights-section-summer-2019-newsletter.pdf?sfvrsn=af5e0cf1_4#:~:text=In%20contrast%20to%20Edmundson%20and,limitations%20under%20an%20installment%20note [https://perma.cc/7MPA-GE24].

2008 installment, and never made another payment. Id. The Edmundsons filed

for Chapter 13 bankruptcy in June 2009. Id. Their bankruptcy plan was confirmed,

and they were discharged on December 31, 2013. Id. The lender filed a notice of

default on October 23, 2014 and a trustee sale was scheduled to satisfy the unpaid

monthly obligations under the note and DOT. Id.

The Emundsons sought to restrain the trustee's sale and quiet title to the

property. Id. at 924. They argued the bankruptcy discharge of their personal

liability on the note rendered the deed of trust unenforceable. Id. This court

rejected the premise that the lien was discharged, stating, "In sum, nothing in this

record and nothing under either federal or state law supports the conclusion that

the discharge of personal liability on the note also discharges the lien of the deed

of trust securing the note. The deed of trust is enforceable." Id. at 927.

The Edmundsons also argued under the Walcker case that the statute of

limitations had begun to run on the deed of trust as of their first missed payment

on the note on November 1, 2008. Id. at 929. And, since the statute of limitations

had run before the lender attempted to enforce the note, the DOT was no longer

enforceable. Id. However, we rejected the Edmundsons' and the trial court's

reliance on Walcker for the proposition that the statute of limitations had run. Id.

at 928. The Walcker case concerned failure to pay on a demand note. 79 Wn.

App. at 741. We noted that Walcker applied the six year statute of limitations,

running from the date of execution of the note, and found the lender's efforts to

foreclose on the deed of trust were barred as untimely. Edmundson, 194 Wn. App.

13

at 928-9. But, because the Edmundsons' debt was an installment note, <u>Walcker</u> was inapplicable. <u>Id.</u> at 929.

We also rejected the Edmundsons' argument that no resort to remedies under the deeds of trust act, ch. 61.24 RCW, had occurred before the statute of limitations had run. <u>Id.</u> at 930. We concluded that the October 23, 2014 written notice of default was evidence of resort to remedies under the act. <u>Id.</u> Under the Edmundsons' theory, the statute of limitations began running November 1, 2008 and would have expired on October 31, 2014. <u>Id.</u> Thus, even under their timeline, the action on the deed of trust was not untimely. <u>Id.</u> at 931.

And, we rejected the Edmundsons' premise that the statute of limitations began to run on the full amount of the note from the first missed payment. <u>Id.</u> at 931-32. That argument contradicted settled law from the Washington Supreme Court: "'[W]hen recovery is sought on an obligation payable by installments, the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it.'" <u>Id.</u> at 930 (quoting Herzog, 23 Wn.2d at 388). Missing a payment in an installment note does not trigger the running of the statute of limitations on the portions of the debt that are not yet due or mature.

We then applied this rule to the individual payments the Edmundsons missed beginning with the November 1, 2008 payment and every successive payment due prior to the bankruptcy discharge that ended their personal liability on the note. <u>Id.</u> at 931. Because the nonjudicial foreclosure commenced October 23, 2013, "each of these missed payments accrued within six years of the resort

14

to the remedies under the deeds of trust act. The statute of limitations did not bar enforcement of the deed of trust for these missed payments." Id. at 931. Therefore, in the pending in rem nonjudicial foreclosure action, no portion of the debt was rendered unenforceable by the statute of limitations.

The trial court apparently believed that either the lender or the Edmundsons' bankruptcy had accelerated the note and triggered the statute of limitations on the entire debt. Id. But, "[d]efault in payment alone does not work an acceleration." Id. at 932. While acceleration of the maturity of the note was an option for the creditor under the Edmundsons' DOT, we determined "there was no evidence that the lender had accelerated the maturity date of the note," and "to the extent that the trial court ruled that some event during the bankruptcy proceeding triggered [the acceleration] provision, the court is wrong." Id. at 931-32. "Accordingly . . . the statute of limitations for each monthly payment accrued as the payment became due." Id.

The Edmundson opinion addressed the various issues through application of settled law. But, subsequent courts have interpreted Edmundson as announcing a new rule. The first manifestation of a new rule of law attributed to Edmundson came in Jarvis v. Federal National Mortgage Association, No. C16-5194-RBL, 2017 WL 1438040 (W.D. Wash. Apr. 24, 2017), aff'd, 726 F. App'x 666 (9th Cir. 2018). It observed,

> The last payment owed commences the final six-year period to
> enforce a deed of trust securing a loan. This situation occurs when
> the final payment becomes due, such as when the note matures or
> a lender unequivocally accelerates the note's maturation.

15

Id. at 2. This much is settled Washington law. The decision goes on to say,

> It also occurs at the payment owed immediately prior to the discharge of a borrower's personal liability in bankruptcy, because after discharge, a borrower no longer has forthcoming installments that he must pay.[9] See Edmundson, 194 Wn. App. at 931; see also Silvers v. U.S. Bank Nat['l] Ass'n, [No. 15-5480 RJB], 2015 WL 5024173, at *4.
>
> . . . .
>
> Because the Edmundsons owed no future payments after the discharge of their liability, the date of their last-owed payment kickstarted the deed of trust's final limitations period. . . .
>
> . . . .
>
> The Court agrees with Silvers'[s] and Edmundson's holdings. The discharge of a borrower's personal liability on his loan—the cessation of his installment obligations—is the analog to a note's maturation. In both cases, no more payments could become due that could trigger RCW 4.16.040's limitations period. . . .
>
> . . . .

---

[9] The mistaken idea that bankruptcy starts the clock on enforcement of the DOT appears to have originated with a lender's argument to the court in Silvers. No. 15-5480 RJB, 2015 WL 5024173, at *4. In its motion to dismiss, U.S. Bank acknowledged "there can be no doubt that the Deed of Trust lien survived the Chapter 7 bankruptcy." Without citation to supporting law, U.S. Bank made the assertion that the statute of limitations "began running the last time any payment on the Note was due," which was the payment immediately prior to discharge in bankruptcy. The court accepted U.S. Bank's argument and concluded,

> The statute of limitations on the right to enforce the Deed of Trust began running the last time any payment on the Note was due. The Plaintiffs remained personally liable on the Note (and successive payments continued to be due) until January 1, 2010, when they missed that payment; they received their Chapter 7 discharge on January 25, 2010. Accordingly, the statute of limitations to enforce the Deed of Trust lien began to run on January 1, 2010.

Silvers, No. 15-5480 RJB, 2015 WL 5024173, at *4. Silvers was cited to in briefing in the Edmundson case, but not mentioned, let alone adopted in Edmundson. And, Silvers could not have established new law as federal courts have no authority to decide Washington law. In re Estate of Stoddard, 60 Wn.2d 263, 270, 373 P.2d 116 (1962).

> . . . The court's conclusion was not dicta [because] it was necessary to deciding whether the creditor could foreclose on the Edmundsons' home, or whether they could sustain an action for quiet title.

Id. at 2-3 (some internal citations omitted).

However, we did not purport to announce such a rule in Edmundson. We merely applied Herzog to the facts of the case. The Edmundsons missed monthly payments from November 1, 2008 through December 31, 2013 when their personal liability to make the payments ceased. Edmundson, 194 Wn. App. at 931. Our decision focused on whether any of those payments was no longer enforceable in the foreclosure action. The Edmundsons had not asserted that the bankruptcy discharge triggered the running of the statute of limitations on the entire debt. It would have done them no good. The foreclosure was commenced less than a year after the discharge in bankruptcy. It simply was not an issue before the court. And, we did not decide the issue expressly nor in dicta.[10] Such a rule only exists in the inferences drawn and stated in the federal decisions.

---

[10] Nor did we discuss the policy implications of such a rule in Edmundson. Such a rule implicates a number of policies that do not arise from nonpayment in a nonbankruptcy setting. The debtor may benefit by a shorter window in which the lien may be extinguished, or by living in the property for free while the lender foregoes foreclosure. As title holder, the debtor may be able to take advantage of market changes to sell the property for more than the lien amount if the lender is not forced for foreclose rapidly. The stability of land title records may be a concern. The debtor remains on the title pending foreclosure. The debtor can execute a deed in lieu of foreclosure to remove themselves from title. The sanctity of contract is raised by determining that discharge of personal liability on the installment note eliminates the lender's contraction option, it is a choice to accelerate or not to accelerate the maturity of the debt. The lender may find changing economic conditions make it more favorable to ultimate recovery to delay enforcement, though some portion of the debt may become uncollectable. This is not exhaustive of potential policy concerns. The important point is that we undertook no such policy analysis in Edmundson as would have been expected when announcing a new rule.

17

Such a rule would attribute to a bankruptcy discharge of the debtor more than relief from personal liability. It would mean the option of the lender to accelerate or not to accelerate the maturity date of the note was eliminated. It would mean that the payment schedule no longer applied and the maturity was accelerated. Affecting the lender's rights in a negative manner is not necessary to effect the purposes of the bankruptcy discharge. The federal district court decisions do not rely on any provision in the bankruptcy code as requiring such a result. We can find no bankruptcy provision that would do so.

Moreover, Jarvis's explanation of the rule is totally at odds with our rejection of the notion that the maturity of the loan was accelerated by the lender or by bankruptcy discharge. Edmundson, 194 Wn. App. at 932. Our opinion did not announce an "analog" rule. Rather, the federal district court arrived at this result through its misinterpretation of Edmundson.[11]

In 2019 another federal district court case added to the error. Hernandez v. Franklin Credit Mgmt. Corp., No. BR 18-01159-TWD, 2019 WL 3804138 (W.D. Wash. Aug. 13, 2019), aff'd sub nom. In re Hernandez, 820 F. App'x 593 (9th Cir. 2020). It observed,

> In Edmundson, the Washington State Court of Appeals ruled that the six-year statute of limitations for enforcing a deed of trust payable in installments begins to accrue on each month that a

---

[11] The next case chronologically, cites to Jarvis and Edmundson for the rule, but does not comment on it. Taylor v. PNC Bank, Nat'l Ass'n, No. C19-1142-JCC, 2019 WL 4688804, at *2 (W.D. Wash. Sept. 26, 2019) ("the six-year statute of limitations period for enforcing a deed of trust payable in installments begins to accrue on each date that a borrower defaults on a payment until the borrowers' personal liability is discharged in a bankruptcy proceeding, as after that point no future installment payments will be due.").

18

borrower defaulted on a payment, until the borrowers' personal liability is discharged in a bankruptcy proceeding. The court of appeals reasoned that the statute of limitations does not continue to accrue after discharge because, at that point, installment payments are no longer due and owing under either the note or deed of trust. Several courts have adopted this legal rule from *Edmundson*. See U.S. Bank NA v. Kendall, [No. 77620-7-I] slip. op. at 4 (Wash. Ct. App. [July 1,] 2019) [(unpublished), http://www.courts.wa.gov /opinions/pdf/776207 .pdf] (noting that although a deed of trust's lien is not discharged in bankruptcy, the limitations period for an enforcement action "accrues and begins to run when the last payment was due" prior to discharge); Jarvis v. Fed. Nat'l Mortg. Ass'n, []No. C16-5194-RBL, []at 6 (W.D. Wash. 2017), aff'd mem., 726 Fed. App'x. 666 (9th Cir. 2018) ("The final six-year period to foreclose runs from the time the final installment becomes due . . . [which] may occur upon the last installment due before discharge of the borrower's personal liability on the associated note").

Id. at *3 (emphasis added) (some internal citations omitted). Hernandez's source

for the rule is clearly Jarvis, but the emphasized language is its own addition to the

error.[12] No such statement is found in the Edmundson opinion.

In Edmundson, this court did not say that bankruptcy discharge of liability

on an installment note accelerates the maturity of the note. We did not say that

---

[12] Notably, two unpublished Court of Appeals cases have picked up on the interpretation given to Edmundson by the federal district court. The first in time cited to Jarvis for the rule. U.S. Bank v. Kendall, No. 77620-7-I, slip. op. at 9 (Wash. Ct. App. July 1, 2019) (unpublished), http://www.courts.wa.gov /opinions/pdf/776207.pdf (noting that a deed of trust's lien is not discharged in bankruptcy but the limitations period for an enforcement action "accrues and begins to run when the last payment was due" prior to discharge), review denied, 194 Wn.2d 1024, 456 P.3d 394 (2020). The parties accepted that Edmundson stated the appropriate statute of limitations rule. Ultimately, the decision in the case did not turn on the issue.

The second cited to Jarvis and Hernandez and incorporated language from those cases purporting to explain the rule. Luv v. W. Coast Servicing, Inc., No. 81991-7-I, slip. op at 4-5 (Wash. Ct. App. 2d August 2, 2021) (unpublished) https://www.courts.wa.gov/opinions/pdf/819917.pdf ("the six-year statute of limitations on the note was triggered on March 1, 2009, the date that Luv's last payment was due prior to his bankruptcy discharge"). The outcome of that opinion is contrary to the outcome here.

the discharge kickstarts the running of the deed of trust's final statute of limitations period. We did not say that discharge is an analog to acceleration and triggers the statute of limitations on the entire obligation. We did not say we were announcing any new rule. Rather, we simply applied settled law from Herzog, that the statute of limitations runs on each installment of a promissory note from the date it is due. Edmundson, 194 Wn. App. at 931.

The federal district court cases rely solely on the Edmundson decision as the basis for the state law they apply. Their interpretation of Edmundson is erroneous.

Edmundson does not stand for the proposition that bankruptcy discharge of personal liability of the debtor accelerates the obligation on an installment note or commences the statute of limitations on both the outstanding balance of the note and on enforcement of the DOT. The trial court erred in relying on Edmundson for such a proposition.

E. The Statute of Limitation in this Case

Under Herzog and Edmundson, the statute of limitation on Kurtz's installment debt would have begun to run on each payment individually from its due date. Bankruptcy would not toll the statute of limitations. Hazel v. Van Beek, 135 Wn.2d 45, 64-66, 954 P.2d 1301 (1998); Merceri, 2 Wn. App. 2d at 148. Here, the SCRA applied and tolled the statute of limitations until Shawn no longer had personal liability on the note. That occurred on July 13, 2011, the date of the discharge of his personal liability on the debt. The statute of limitation began to run on all of the past due installments from that date.

20

No. 82083-4-I/21

There is no evidence the lender exercised an option and accelerated the installment note. The trial court erroneously relied on Edmundson to conclude that Shawn's bankruptcy accelerated the note or triggered the statute of limitations on enforcing the DOT. The bankruptcy eliminated only Shawn's personal liability on the note. The debt, the note, and the payment schedule remain unchanged. The notice of nonjudicial foreclosure was given on October 20, 2019 prior to the November payment coming due. Any outstanding installments prior to November 2013, are not enforceable in the foreclosure action due to the six year statute of limitations. But, enforcement of the DOT was not barred as to the remainder due under the note.

The trial court erred by quieting title in Copper Creek.

II.   Attorney Fees

The trial court awarded Copper Creek attorney fees and costs for the summary judgment and quieting title under multiple rules: RCW 4.84.185 for frivolous defenses advanced without reasonable cause, the contractual attorney fee provision in the DOT (RCW 4.84.330 and RCW 4.28.328 for prevailing in a defense of a lis pendens), and equity based on Selene/Wilmington's "bad faith and misconduct shown repeatedly and throughout this case." Selene/Wilmington argues the trial court erred by awarding attorney fees and costs to Copper Creek for its defense of the case and for responding to the motions to dismiss.

"Under Washington law, a trial court may grant attorney fees only if the request is based on a statute, a contract, or a recognized ground in equity." Gander v. Yeager, 167 Wn. App. 638, 645, 282 P.3d 1100 (2012). The question

21

of whether there is a legal basis for award of attorney fees is an issue of law we review de novo. Id. at 646.

The DOT contains a mandatory attorney fee provision, "Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security instrument." RCW 4.84.330 makes this provision reciprocal: "[T]he prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements."

As a result of our decision, Copper Creek is no longer the prevailing party and cannot recoup attorney fees under the terms of the DOT. The court's additional reasons for the attorney fee award—RCW 4.84.185 and 4.28.328—also fail based on our decision in favor of Selene/Wilmington. Copper Creek acquired its interest from Kurtz through the deed in lieu of foreclosure and is subject to the terms of the DOT. Selene/Wilmington is entitled to attorney fees at trial as the prevailing party under the DOT.

However, we do not set aside the award of attorney fees made by the trial court. The record is clear that the trial court strongly believed that an independent basis in equity justified the award of attorney fees. We agree. The change of prevailing party does not require vacating that equitable award.

An appellate court reviews the amount of attorney fees awarded for abuse of discretion. Ethridge v. Hwang, 105 Wn. App. 447, 460, 20 P.3d 958 (2001). "A trial judge is given broad discretion in determining the reasonableness of an award, and in order to reverse that award, it must be shown that the trial court manifestly

22

No. 82083-4-I/23

abused its discretion." Id. Selene/Wilmington strongly opposed Copper Creek's motion for attorney fee, and specifically called attention to several billing entries it considered to be related only to the Kurtzes or QLS. The trial court reduced the amount of fees recoverable from the requested $113,430.80 to $96,779.09. It reviewed the billing and awarded attorney fees broken down by month. This was a proper exercise of the court's discretion.

Selene/Wilmington is the prevailing party on appeal. The contractual provision for an award of attorney fees in the DOT supports an award of attorney fees on appeal. Edmundson, 194 Wn. App. at 920. Therefore, we award attorney fees on appeal to Selene/Wilmington.

We reverse and remand for further proceedings.

_Appelwick, J._

WE CONCUR: