**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**MARCH 28, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MICHELLE E. LOUN, | ) | |
| | ) | No. 38769-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. BANK NATIONAL | ) | PUBLISHED OPINION |
| ASSOCIATION, AS INDENTURE | ) | |
| TRUSTEE ON BEHALF OF AND WITH | ) | |
| RESPECT TO AJAX MORTGAGE | ) | |
| LOAN TRUST 2018-B, MORTGAGE- | ) | |
| BACKED NOTES, its successors-in- | ) | |
| interest and/or assigns, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — In 2014 and again in 2017, U.S. Bank National

Association's (U.S. Bank's) predecessor instituted two deed of trust judicial foreclosure

actions against Michelle Loun. Both actions were involuntarily dismissed. After

dismissal of the first action and for several months thereafter, Ms. Loun received monthly

mortgage statements showing that the current balance did not include the accelerated

amount.

In 2020, Ms. Loun filed this quiet title action against U.S. Bank, requesting that

the deed of trust be declared void because the six-year statute of limitations had run on

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

the underlying debt. U.S. Bank brought a separate deed of trust judicial foreclosure action against Ms. Loun. The trial court consolidated both actions and later granted Ms. Loun's summary judgment motion on her quiet title claim.

This appeal requires us to consider if acceleration occurred, what the standard of proof is to reverse an election to accelerate,[1] whether summary judgment was properly granted, and to what extent, if any, the six-year statute of limitations was tolled. We conclude that the prior judicial foreclosure actions accelerated the debt, a preponderance of evidence is required to establish that acceleration was revoked, the evidence presented by U.S. Bank allows reasonable minds to conclude that acceleration was revoked, and the prior judicial foreclosure actions did not toll the statute of limitations. We reverse the trial court's summary judgment order, deny the parties their premature requests for attorney fees and costs on appeal, and remand for further proceedings.

---

[1] Courts and commentators use different terms to describe the concept of reversing an election to accelerate. New York courts use the term "de-acceleration." *See, e.g.*, *Milone v. U.S. Bank NA*, 164 A.D.3d 145, 83 N.Y.S.3d 524 (2018). Others use the term "deceleration." *See* ANDREW J. BERNHARD, *Deceleration: Restarting the Expired Statute of Limitations in Mortgage Foreclosures*, 88 FLA. B.J. 30, 31 (2014). Still others use terms like "waiver" and "abandonment." Technically, to "decelerate" means to slow down, as opposed to undoing or revoking the exercise of a right. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 584 (1993). "Waiver" and "abandonment" suggest a choice to not exercise a right. *See Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954) (waiver); *In re Est. of Lyman*, 7 Wn. App. 945, 948-49, 503 P.2d 1127 (1972) (abandonment). We believe that "revoking acceleration" most accurately describes the concept.

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

FACTS

In 2006, Ms. Loun borrowed $399,900 from Bank of America to purchase residential property in Ellensburg. The debt was solemnized by an adjustable rate note that required monthly payments and was secured by a deed of trust against the property. Ms. Loun last paid on the note in February 2012 and has been in default since March 2012.

Paragraph 22 of the deed of trust sets forth the lender's remedies upon the borrower's default. Those remedies include the lender's right to declare the balance accelerated and the borrower's right to reinstate after acceleration.

In May 2014, Bank of America, NA, initiated the first judicial foreclosure action. The complaint, in relevant part, read: "[T]he Borrower's loan is in default. Because of the default, Plaintiff has exercised and hereby exercises the option granted in the Note and Deed of Trust to declare the whole of the balance of both the principal and interest thereon due and payable." Clerk's Papers (CP) at 973. Bank of America assigned the note and deed of trust to the Federal National Mortgage Association, commonly known as Fannie Mae, which then assigned the instruments to MTGLQ Investors, LP. In July 2016, the trial court dismissed the foreclosure action for want of prosecution.

From July 19, 2016 until January 19, 2017, Bank of America's loan servicer sent monthly mortgage statements to Ms. Loun reflecting the balance owing on the loan. The balance consistently reflected the *past* unpaid amount, the *current* monthly payment, and

3

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

fees and charges. None of these monthly mortgage statements requested payment of any accelerated amount.

After the September 2016 monthly statement, Ms. Loun's attorney e-mailed the loan servicer, asking for all documents and information about the loan. Consistent with its monthly statements, the loan servicer's response described the loan's maturity date as May 1, 2046, which clearly implied that acceleration had been revoked.[2]

In October 2017, MTGLQ initiated the second judicial foreclosure action. Similar to the earlier complaint, the second complaint notified Ms. Loun of the lender's election to accelerate the loan. While the second action was pending, U.S. Bank acquired the note and deed of trust from MTGLQ. In May 2019, the trial court—for procedural reasons—granted Ms. Loun's motion to strike MTGLQ's complaint. U.S. Bank did not file an amended complaint.

In October 2020, Ms. Loun filed a quiet title action against U.S. Bank, alleging that the six-year statute of limitations had run on any legal right for U.S. Bank to foreclose on the deed of trust. Days later, U.S. Bank filed a third judicial foreclosure action against Ms. Loun. The trial court consolidated both actions.

---

[2] We question the loan servicer's description of a May 1, 2046 maturity date. The adjustable rate note expressly states that the maturity date is March 1, 2036, even if amounts are still owed.

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

Ms. Loun moved for summary judgment dismissal of U.S. Bank's foreclosure action on the basis that collection of the debt secured by the deed of trust was time barred. U.S. Bank raised numerous arguments. It argued that the 2014 acceleration of the loan was revoked, waived, or abandoned, that the subsequent judicial foreclosures revoked any and all prior accelerations and started a new limitations period, and that the prior judicial foreclosure actions tolled the statute of limitations. The trial court disagreed with all of U.S. Bank's arguments and granted Ms. Loun's motion.

U.S. Bank timely moved for reconsideration and argued that the prior foreclosure actions never accelerated the debt. The trial court denied U.S. Bank's motion, and the bank timely appealed.

ANALYSIS

STANDARD OF REVIEW

We review summary judgment orders de novo, engaging in the same inquiry as the trial court. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014). When ruling on a motion for summary judgment, a court views the facts submitted and the reasonable inferences that may be drawn from those facts in the light most favorable to the nonmoving party. *Id.* A court may grant a motion for summary judgment if reasonable minds could reach only one conclusion from the facts submitted. *Id.*

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

This case presents us with an opportunity to address acceleration of a debt, revocation of acceleration, and under what circumstances collection of the debt is barred by the statute of limitations.

ACCELERATION

An action on a written contract is subject to the six-year statute of limitations. RCW 4.16.040(1). When a contract, such as a promissory note, calls for installment payments, "the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it." *Herzog v. Herzog*, 23 Wn.2d 382, 388, 161 P.2d 142 (1945).

Acceleration of a debt upon the borrower's default is a benefit to the lender that causes the entire balance of the loan to become due and payable. *Merceri v. Bank of N.Y. Mellon*, 4 Wn. App. 2d 755, 760-61, 434 P.3d 84 (2018); *accord* Matthew B. Nevola, *Foreclosure Madness: Using Mortgage Deceleration to Evade the Statute of Limitations*, 46 HOFSTRA L. REV. 1453, 1468 (2018). However, when a debt is accelerated, the statute of limitations on the entire balance begins to accrue. *4518 S. 256th, LLC v. Karen L. Gibbon, PS*, 195 Wn. App. 423, 434-35, 382 P.3d 1 (2016). If the statute of limitations precludes enforcement of the note and deed of trust, a property owner can file a quiet title action seeking to have the encumbrance removed from the title. *See* RCW 7.28.300.

Washington cases hold that acceleration of an installment note must be made in a clear and unequivocal manner that effectively apprises the maker that the holder has

6

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

exercised his right to accelerate the installment debt. *4518 S. 256th*, 195 Wn. App. at 435; *Glassmaker v. Ricard*, 23 Wn. App. 35, 38, 593 P.2d 179 (1979).

U.S. Bank contends the loan was never accelerated because Ms. Loun retained the right to reinstate the loan. U.S. Bank cites our recent decision of *U.S. Bank National Association v. Ukpoma*, 8 Wn. App. 2d 254, 438 P.3d 141 (2019). There, the lender gave notice to the borrower of her default and of its election to accelerate, but the lender also stated that the borrower could reinstate the loan by paying the current balance, late charges, costs, and fees. *Id.* at 256-57. We concluded that acceleration did not occur because the notice was ambiguous and inconsistent. *Id.* at 259. Judge Siddoway disagreed with this holding, but concurred on the basis that the statute of limitations had not run on the underlying debt. *Id.* at 261-66 (Siddoway, J., concurring in part and dissenting in part).

We believe that *Ukpoma* wrongly decided the acceleration issue. As noted in *Ukpoma*, the borrower's right to reinstate after acceleration, but prior to a trustee's sale, was protected both by contract and by statute. *Id.* at 257 n.1. To the extent the lender's right to accelerate was qualified by the borrower's right to reinstate, the lender exercised its right as clearly and broadly as it could. We conclude that U.S. Bank's predecessor clearly and unequivocally elected to accelerate the debt, notwithstanding that the deed of trust contained a right for Ms. Loun to reinstate after acceleration.

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

REVOCATION OF ACCELERATION

*Standard of proof*

The parties dispute whether U.S. Bank must prove revocation of acceleration by a preponderance of the evidence or by clear and unequivocal evidence. To answer this question, we review why courts apply different standards of proof.

The evidentiary standard to be applied to a particular claim is "based upon the nature of the interest at stake—the interest which is subject to erroneous deprivation if a mistake is made." *Bang D. Nguyen v. Dep't of Health Med. Quality Assurance Comm'n*, 144 Wn.2d 516, 524, 29 P.3d 689 (2001). The applicable evidentiary standard reflects "'the degree of confidence our society thinks [the fact finder] should have in the correctness of factual conclusions for a particular type of adjudication.'" *Id.* (internal quotation marks omitted) (quoting *Addington v. Texas*, 441 U.S. 418, 423, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)). Thus, the more important the decision, the higher the standard of proof. *Id.*

In general, the lowest standard, preponderance of the evidence, applies to civil actions, because society has a minimal interest in the outcome of private disputes. *Id.* The highest standard is beyond a reasonable doubt, in which the accused and society's interests in avoiding wrongful convictions are so great that the standard of proof is designed to exclude as nearly as possible the likelihood of an erroneous judgment. *Id.*

8

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

"When the interests at stake in a lawsuit are more significant than a money judgment but less consequential than a deprivation of individual liberty, courts must apply an intermediate evidentiary standard that requires 'clear, cogent, unequivocal, and/or convincing' proof." *In re Custody of C.C.M.*, 149 Wn. App. 184, 203, 202 P.3d 971 (2009) (internal quotation marks omitted) (quoting *Nguyen*, 144 Wn.2d at 524-25). In *C.C.M.*, we held that the clear and convincing evidentiary standard applied to decisions that risked erroneously depriving parents of their constitutionally protected rights to the custody, care, and control of their children. *Id.* at 203-05.

Here, this is a private dispute about whether a debt is owed by Ms. Loun to U.S. Bank. A conclusion that acceleration was revoked preserves the lender's contractual remedy against its borrower, who has breached her promise to repay. Given this, we conclude that the preponderance of the evidence standard is appropriate for determining whether the acceleration has been revoked.

### *Whether revocation occurred is a question of fact*

We next must decide whether reasonable minds can find that acceleration was revoked. As mentioned previously, when reviewing whether summary judgment was properly granted, we construe the evidence and all reasonable inferences in favor of the nonmoving party. *SentinelC3*, 181 Wn.2d at 140. In this instance, the evidence and all reasonable inferences must be construed in favor of U.S. Bank.

9

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

Ms. Loun argues that U.S. Bank should not be allowed to revoke acceleration because the deed of trust does not allow for it to do so. Ms. Loun cites *PNC Bank, NA v. Unknown Successor Trustees of the Robert C. Keck Revocable Living Trust*, 2020 OK Civ. App. 60, 479 P.3d 238, as persuasive authority for her position that revocation of acceleration should be allowed only if the parties' contract expressly authorizes it. *PNC Bank* did not cite any authority for this holding and its holding has not been cited with approval by any other jurisdiction.

Other courts have reached a different conclusion. For example, in *Freedom Mortgage Corporation v. Engel*, 37 N.Y.3d 1, 28-29, 169 N.E.3d 912, 146 N.Y.S.3d 542 (2021), New York's highest court held that absent a specific provision in the contract governing revocation of acceleration, "revocation can be accomplished by an 'affirmative act' of the noteholder within six years of the election to accelerate." Allowing lenders to revoke acceleration—even in the absence of an express provision in the contract— benefits both lenders and borrowers. It benefits lenders by giving them more flexible remedies. It benefits borrowers by allowing them to cure a default without paying the entire balance of the loan. For this reason, we adopt the rule in *Engel*.

Therefore, the dispositive question is whether reasonable minds can find that U.S. Bank's predecessor affirmatively revoked acceleration within six years of May

10

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

2014, when it first accelerated the loan.[3]  As explained below, reasonable minds can so find.

Here, Bank of America accelerated the loan when it initiated the first judicial foreclosure action in May 2014.  Soon after that action was dismissed in July 2016, the loan servicer sent seven monthly statements to Ms. Loun notifying her that the balance of her loan did not include any accelerated amounts.  In addition, in October 2016, the loan servicer responded to Ms. Loun's request for information by describing the loan as having a maturity date three decades in the future.  For these reasons, reasonable minds can find that U.S. Bank's predecessor affirmatively revoked acceleration within six years of 2014 and the six-year statute has not run on the entire obligation.  We conclude the trial court erred in granting summary judgment in favor of Ms. Loun.

TOLLING

In the interest of judicial economy, an appellate court may consider an issue that is likely to occur following remand if the parties have briefed and argued the issue in detail. *State ex rel. Haskell v. Spokane County Dist. Ct.*, 198 Wn.2d 1, 16, 491 P.3d 119 (2021). Both below and on appeal, the parties briefed the issue of tolling.  Judicial economy favors resolving the issue now rather than in a later appeal.

_____

[3] The second acceleration occurred in October 2017, three years before the parties initiated this current claim and counterclaim.  The six-year statute of limitations therefore has not run with respect to the second acceleration.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

RCW 4.16.230 provides, "When the commencement of an action is stayed by injunction or a statutory prohibition, the time of the continuance of the injunction or prohibition shall not be a part of the time limited for the commencement of the action."

*Bankruptcy tolls the statute of limitations*

There is some evidence in the record that Ms. Loun may have been in bankruptcy sometime between 2014 and 2020. *See, e.g.*, CP at 1145. 11 U.S.C. § 362(a) automatically stays all proceedings against a debtor. If Ms. Loun was in bankruptcy anytime within six years of when U.S. Bank commenced its action, the statute of limitations would be tolled to that extent.

*Judicial foreclosure actions do not toll the statute of limitations*

Without citing any direct authority, U.S. Bank contends that the two judicial foreclosure actions tolled the statute of limitations. We disagree.

U.S. Bank fails to provide any evidence that an injunction or statutory prohibition "stayed" its ability to commence an action to recover the unpaid amounts. RCW 4.16.230. Certainly, its predecessor's judicial foreclosure actions did not stay its ability to recover the unpaid debt. A judicial foreclosure action *is* an action to collect an

12

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

unpaid debt. We conclude that the judicial foreclosure actions did not toll the statute of

limitations.[4]

ATTORNEY FEES AND COSTS

Both parties request an award of reasonable attorney fees and costs on appeal.

They cite paragraph 7(E) of the note, and paragraph 26 of the deed of trust. The former

authorizes the lender to recover all costs and expenses to recover the accelerated amount,

and the latter authorizes the lender to recover its reasonable attorney fees and costs in any

action to enforce the security instrument. RCW 4.84.330 modifies unilateral attorney fee

provisions in contracts so that only the prevailing party is entitled to recover reasonable

attorney fees and costs, whether or not that party is specified in the contract as entitled to

fees.[5] *Wash. Fed. v. Gentry*, 179 Wn. App. 470, 496, 319 P.3d 823 (2014).

---

[4] In *Bingham v. Lechner*, 111 Wn. App. 118, 131, 45 P.3d 562 (2002), the trial court found, and on appeal the parties agreed, that commencement of a nonjudicial foreclosure tolls the statute of limitations. The appellate court did not analyze this issue. To the extent *Bingham* agreed with the trial court, we disapprove of its conclusion because *Bingham* fails to identify any statute that stays or enjoins the ability of a deed of trust beneficiary from commencing an action to recover the debt.

RCW 61.24.030(4) certainly does not stay or enjoin recovery of the debt. That subsection precludes a trustee's sale if there is a pending action by the deed of trust beneficiary to collect the unpaid debt. This preclusion is not a stay or an injunction from recovering the debt; rather, it is a prohibition against concurrent attempts to collect the same debt.

[5] We suspect that most of the "fees and charges" reflected in the monthly mortgage statements are attorney fees and costs incurred by U.S. Bank's predecessor in the two unsuccessful foreclosures. If so, because the predecessor did not prevail in those actions, we doubt U.S. Bank can recover those amounts.

13

No. 38769-1-III
*Loun v. U.S. Bank Nat'l Ass'n*

The above provisions will entitle the prevailing party to reasonable attorney fees and costs, both at trial and on appeal. But neither party has yet prevailed. For this reason, we decline to award either party reasonable attorney fees and costs on appeal.

We authorize the trial court to include in its judgment an award of reasonable attorney fees and costs to the prevailing party for this appeal. But because Ms. Loun did not ultimately prevail on her summary judgment motion, her reasonable attorney fees and costs for litigating these issues should be discounted. *See Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597, 675 P.2d 193 (1983) ("The court must limit the lodestar to hours reasonably expended, and should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time.").

Reversed and remanded.

Lawrence-Berry, J.

WE CONCUR:

Siddoway, C.J.

Staab, J.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38769-1-III

SIDDOWAY, C.J. (concurring) — Michelle Loun's deed of trust states that in the event of her failure to cure a default on or before the date provided in a proper notice, "Lender *at its option*, may require immediate payment in full of all sums secured by this Security Instrument without further demand." Clerk's Papers (CP) at 26 (emphasis added). As explained by the lead opinion, since acceleration is optional with the lender, the lender can revoke it unless the borrower has detrimentally relied.

Ms. Loun argues that Washington requires "clear and unequivocal *evidence*" of acceleration of a promissory note and "[i]t would be inconsistent to apply one standard to trigger acceleration and a different, lower standard to revoke it." Resp't's Br. at 2 (emphasis added). Amicus curiae characterizes Washington cases as holding that acceleration requires "'clear and unequivocal' *notice* to a debtor" and, similar to Ms. Loun, argues that consistency requires that notice of revoking acceleration be clear and unequivocal. Amicus Br. of Nw. Consumer L. Ctr. at 5 (emphasis added). I write separately to address "clear and unequivocal" as a characteristic of the act of acceleration rather than the standard of proof.

Symmetry for symmetry's sake is not a reason for holding that a lender must revoke acceleration by clear and unequivocal notice. We do not lightly impose special burdens on one party to a contract. The question to be examined is whether the reasons Washington courts have required acceleration to be clear and unequivocal supports

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38769-1-III (concurrence)
*Loun v. U.S. Bank Nat'l Ass'n*

requiring that the lender be clear and unequivocal when it revokes acceleration. Not only do the historical reasons *not* support this proposed requirement, but where, as here, the mortgage is a standard form Fannie Mae/Freddie Mac mortgage, there is no longer any borrower-protective need for acceleration *itself* to be clear and unequivocal.

Washington cases have historically offered two reasons for requiring that a lender exercise its right to accelerate affirmatively, or clearly and unequivocally. One protects the lender; the other protects the buyer. The earliest cases address the reason that protects the lender.

I.   PROTECTING LENDERS: BORROWERS SHOULD BE PREVENTED FROM ARGUING THAT A LENDER'S RIGHT TO REPAYMENT IS ENTIRELY TIME BARRED BASED ON EQUIVOCAL EVIDENCE OF ACCELERATION

In *First National Bank of Snohomish v. Parker*, 28 Wash. 234, 68 P. 756 (1902), a borrower/mortgagor defended against foreclosure by arguing that a provision in the mortgage provided that upon default of payment of interest when due the right of foreclosure accrued immediately—and since its default had occurred more than six years before commencement of the action, foreclosure was time barred. The court observed that the general rule is that the default "*must be claimed by the mortgagee*, or it is waived. It is for the benefit of the mortgagee, and cannot be taken advantage of by the mortgagor." *Id.* at 237 (emphasis added).

The principle was the basis for rejecting a similar statute of limitations defense in *White v. Krutz*, 37 Wash. 34, 36, 79 P. 495 (1905). In that case, the borrowers had

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38769-1-III (concurrence)
*Loun v. U.S. Bank Nat'l Ass'n*

promised on January 1, 1895, to pay interest semiannually, but never did. The parties' agreement provided that upon a default in payment "the indebtedness . . . should immediately become due and payable, without notice." *Id.* at 35. In an action commenced more than six years after the first default in payment, the court again held that since the provision was for the mortgagee's benefit, it could be waived by him and could not be taken advantage of by the mortgagor. *Id.* at 36.

II. PROTECTING BORROWERS: THE REQUIREMENT OF AN AFFIRMATIVE ACT OF ACCELERATION PROVIDES A BRIGHT LINE FOR THE TIME WITHIN WHICH A BORROWER MAY CURE A DEFAULT

In other early cases, the requirement that the lender take an affirmative act to accelerate was applied to protect the borrower/mortgagor. In *Zeimantz v. Blake*, 39 Wash. 6, 10, 80 P. 822 (1905), it was said that "time was made of the essence of the [parties'] contract, and a forfeiture occurred as of course on default of any payment," yet the court held that to avoid foreclosure, the mortgagor was not required to prove a history of timely payments. It held, "Undoubtedly the party agreeing to make the sale could declare a forfeiture, and cut off the right of the other party to make the payments, *but it required some affirmative action on his part.* If he remained passive until the other party made tender of payment, he was obligated to accept it." *Id.* at 10 (emphasis added).

The same reasoning was applied in *Weinberg v. Naher*, which held that just as a right to accelerate that is not exercised will not start the running of the statute of limitations, it will not "'of itself, forfeit the contract in equity simply because a payment

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38769-1-III (concurrence)
*Loun v. U.S. Bank Nat'l Ass'n*

was not made immediately on its falling due.'" 51 Wash. 591, 596-97, 99 P. 736 (1909)

(quoting *Zeimantz*, 39 Wash. at 10). Expanding on *Zeimantz*'s requirement of "some

affirmative action," the court explained that for the debt to become due:

> Some affirmative action is required, some action by which the holder of the
> note makes known to the payors that [he] intends to declare the whole debt
> due. This exercise of the option may of course take different forms. It may
> be exercised by giving the payors formal notice to the effect that the whole
> debt is declared to be due, or by the commencement of an action to recover
> the debt, *or perhaps by any means by which it is clearly brought home to
> the payors of the note that the option has been exercised* before the interest
> is paid or tendered.

*Id.* at 594 (emphasis added).

In *Coman v. Peters*, 52 Wash. 574, 576, 100 P. 1002 (1909), the borrower's tender

of a payment of interest was late, yet "up to the moment the tender was made . . . there

had not been any notice, or even intimation . . . to the payors . . . that the interest money

would be refused, or that it (payee) elected to declare the whole debt due." The payee's

action to foreclose was therefore dismissed by the trial court on the ground that the debt

had not matured. The Supreme Court affirmed and observed (having recounted the

decisions in *Parker*, *Zeimantz*, and *Weinberg*) that "this court is fully committed to the

doctrine . . . that mere default in payment does not mature the whole debt, whether there

be words of option in the agreement or not. Such a provision hastening the date of

maturity of the whole debt is for the benefit of the payee, and *if he does not manifest any

intention to claim it*, before tender is actually made, there is in law no default such as will

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

cause the maturity of the debt before the regular time provided in the agreement." *Id.* at 578 (emphasis added).

It was not until 1979 that this court, not the Supreme Court, adopted the "clear and unequivocal manner" descriptor. In *Glassmaker v. Ricard*, this court stated that acceleration "must be made in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date." 23 Wn. App. 35, 38, 593 P.2d 179 (1979). *Glassmaker* cites *Weinberg* for the proposition, evidently relying on the Supreme Court's statements in *Weinberg* that "affirmative action" is required "by which the holder of the note makes known to the payors that [he] intends to declare the whole debt due," and by which "it is clearly brought home to the payors of the note that the option has been exercised." *Weinberg*, 51 Wash. at 594.

As with *Parker*, *Zeimantz*, and *Weinberg*, *Glassmaker*'s "clear and unequivocal" standard was relied on to determine whether the lender's exercise of the acceleration right was sufficiently clear to cut off the borrower's ability to cure. *Glassmaker* held that the mere filing of a foreclosure complaint without serving it on the mortgagor was not sufficiently clear notice. 23 Wn. App. at 38.

Notably, decisions following *Glassmaker* that have applied the "clear and unequivocal" standard have *not* done so for the borrower-protective reason—they have consistently done so for the lender-protective reason. This is presumably because under

5

No. 38769-1-III (concurrence)
*Loun v. U.S. Bank Nat'l Ass'n*

modern uniform residential mortgages, borrowers no longer need the protection provided

by requiring that acceleration be clear and unequivocal.[1]

III.    REINSTATEMENT RIGHTS UNDER MODERN UNIFORM RESIDENTIAL MORTGAGES
        HAVE ELIMINATED THE IMPORTANCE OF CLARITY AS A PROTECTION FOR THE
        BORROWER

Reinstatement rights under modern uniform residential mortgages have eliminated

the importance of clear and unequivocal acceleration as a protection for the buyer.  The

deed of trust executed by Michelle Loun in 2006 is a uniform mortgage instrument

developed by the Federal National Mortgage Association (Fannie Mae) and Federal

Home Loan Mortgage Corporation (Freddie Mac).  Fannie Mae and Freddie Mac are

government-sponsored enterprises (GSEs) created by Congress to provide stability,

liquidity, and affordability to the residential mortgage market.  *See* 12 U.S.C. § 1716;

12 U.S.C. § 1451.

---

[1] The relevant post-1979 decisions cited by Ms. Loun and amicus apply the "clear and unequivocal" standard to protect a lender against a statute of limitations defense.  In *4518 S. 256th, LLC v. Karen L. Gibbon, PS*, 195 Wn. App. 423, 435-38, 382 P.3d 1 (2016), this court held that notices of default and trustee's sales that demanded payment of arrearages only, without stating that the lender was electing to declare the unpaid balance due, did not meet the "clear and unequivocal" standard for acceleration.  In *Merceri v. Bank of New York Mellon*, 4 Wn. App. 2d 755, 761-62, 434 P.3d 84 (2018), this court held that a notice to a borrower that her entire debt "'*will be* accelerated'" if a default is not cured is not an effective clear and unequivocal acceleration.  (Emphasis added.)  *Accord Terhune v. N. Cascade Tr. Servs., Inc.*, 9 Wn. App. 2d 708, 723, 446 P.3d 683 (2019) (a notice of intent to accelerate does not unequivocally alert the borrower that there has been an election to accelerate).  As a result, none of the foreclosure actions in these cases was time barred.

6

No. 38769-1-III (concurrence)
*Loun v. U.S. Bank Nat'l Ass'n*

Before 1970, little uniformity existed in home mortgage forms. After enactment of the Emergency Home Finance Act (Pub. L. No. 91-351, 84 Stat. 450) in July 1970, however, Fannie Mae created a task force to prepare a draft standard mortgage form. *See* Julia Patterson Forrester, *Fannie Mae/Freddie Mac Uniform Mortgage Instruments: The Forgotten Benefit to Homeowners*, 72 MO. L. REV. 1077, 1083 (2007). In response to public input, Fannie Mae and Freddie Mac developed forms that were quite consumer friendly. *Id.* at 1084-85.

The right to reinstate provision in Ms. Loun's deed of trust gives her the right, even after acceleration, to stop foreclosure and reinstate the loan by paying the amounts that would have been due absent acceleration plus the lender's expenses. The right exists up to the date of a court order of foreclosure or up to five days prior to a power of sale foreclosure. The provision states:

> **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably

7

No. 38769-1-III (concurrence)
*Loun v. U.S. Bank Nat'l Ass'n*

> require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.

CP at 25.

Fannie Mae and Freddie Mac require that loans they purchase be documented on their forms, so originators who wish to sell their loans to Fannie Mae or Freddie Mac must use the instruments. Forrester, *supra*, at 1085. Even lenders who do not contemplate selling their loans to the GSEs typically use the forms, which have become the standard for loans sold on the secondary market. *Id.* As of the time of Professor Forrester's law review article, "[b]y some estimates, more than ninety percent of residential mortgage loans are documented on Fannie Mae/Freddie Mac uniform mortgage instruments, although this percentage may have decreased as the size of the subprime mortgage market has increased." *Id.* at 1086-87 (footnote omitted).

The uniform residential mortgage signed by Ms. Loun affords her the right to bring her loan current to avoid foreclosure up until a final judgment of foreclosure. It is therefore unnecessary that there be a clear and unequivocal act of acceleration to demark the point at which that right is cut off by acceleration. Indeed, a Florida appellate court has observed that in the case of a borrower with Ms. Loun's form mortgage, the dismissal of a foreclosure action returns the parties to the status quo existing before acceleration, making it unnecessary for a lender to even take action to revoke acceleration. *Deutsche Bank Tr. Co. Americas v. Beauvais*, 188 So.3d 938, 947-48 (Fla. Dist. Ct. App. 2016).

8

No. 38769-1-III (concurrence)
*Loun v. U.S. Bank Nat'l Ass'n*

Here, of course, there is action; there are several years' worth of mortgage statements and loan descriptions disclosing that Ms. Loun's loan had been returned to the status quo.

Ms. Loun demonstrates no reason we should require clear and unequivocal notice that acceleration has been revoked. A special burden of providing such notice should not be imposed on lenders.

_____
Siddoway, C.J.